UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AVENIR AGAJ, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:24-CV-10884-JEK |
| BOSTON COLLEGE, | ) | |
| Defendant. | ) | |

**DEFENDANT TRUSTEES OF BOSTON COLLEGE'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Trustees of Boston College ("Boston College") respectfully submits this memorandum in support of its motion to dismiss plaintiff Avenir Agaj's ("Plaintiff" or "Agaj") Affidavit of Fact (referenced herein as "Affidavit" or "Complaint").

INTRODUCTION

In the midst of the pandemic, Boston College required its students, faculty, and staff to be fully vaccinated for the 2021-2022 academic year. Agaj, a landscaper who began work at BC in October of 2020, submitted an exemption request on medical and religious grounds. That request was denied because Agaj did not submit adequate information to support his exemption request. Agaj was subsequently terminated on August 31, 2021. He then filed a complaint with the MCAD for discrimination on the basis of creed. After the dismissal of his complaint by the MCAD, which was affirmed on appeal, Agaj now seeks relief from this Court.

Agaj's Affidavit of Fact must be dismissed. Agaj has not pled that a bona fide religious practice that conflicts with an employment requirement was the reason for his termination. Plaintiff's Affidavit also includes allegations of discrimination and retaliation which were not

alleged in his MCAD Complaint and therefore must be dismissed for failure to exhaust administrative remedies.  Finally, to the extent that Plaintiff's other miscellaneous assertions are considered claims, they must be dismissed for failure to state a claim.[1]

## FACTS[2]

In early 2020, a novel and highly contagious coronavirus now known as COVID-19 spread across the globe.  Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak, 85 Fed. Reg. 15337 (Mar. 18, 2020).[3]  By March 2020, the pandemic had effectively shut down the country as the President and Governors of all 50 states declared States of Emergency.  Id.  By the end of 2020, COVID-19 had killed 10,000 people in Massachusetts and over 367,000 in the United States.  Ctr. For Disease Control and Prevention COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#trends_totaldeaths_select_00 (last visited June 3, 2024).  As of June 3, 2024, 1,191,702 Americans have been killed by COVID-19.  Id. at https://covid.cdc.gov/covid-data-tracker/#maps_deaths-total.

On or about October 19, 2020, Agaj was hired by Boston College as a landscaper.  Aff. p. 1.  On April 23, 2021, Boston College first announced that, in order to "promot[e] the health and safety of our campus community and surrounding neighborhood . . . the University will require

---

[1] Plaintiff's Affidavit of Fact does not include averments of each claim in separate numbered paragraphs or a short and plain statement of each claim as required by Fed. R. Civ. P. 8 and 10(b).

[2] The facts in this section are derived from Agaj's Affidavit of Fact, "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)); Johnson v. Amherst Nursing Home, Inc., No. 14-30100-MGM, 2015 WL 4750932, at *3 n.3 (D. Mass. Aug. 11, 2015) (MCAD and EEOC filings are official public records, which may be considered at the motion to dismiss stage)  (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

[3] The Court may take judicial notice of these facts.  See Bazinet v. Beth Israel Lahey Health, Inc., No. 1:23-CV-11056-AK, 2023 WL 9687614, at *1 n.1 (D. Mass. Dec. 22, 2023).

all students, faculty, and staff to be fully vaccinated (with FDA-approved vaccines) against COVID-19 before participating in any on campus activity related to the 2021-2022 academic year." Aff., p. 1; Ex. 1.  That announcement further stated that exceptions would be granted for legitimate religious and medical reasons.  Ex. 1.

On June 23, 2021, Mr. Agaj filled out and emailed to Boston College's Office for Institutional Diversity his exemption request, stating, in pertinent part, that 1) vaccination would have an adverse effect on his immune system; 2) vaccination would go against his "religius belives faith healing," and 3) "As long as idemnity for vaccines is in place i dont feel safe having one" [sic].  Aff. p. 1; Ex. 3.  In the box requesting medical or religious documentation and any additional information, Mr. Agaj simply wrote, "Please grant me exemption for the reasons stated above."  Ex. 3.  Agaj's exemption request did not identify his religion.  Id.  On the same day, June 23, 2021, BC emailed Agaj requesting documentation in support of his request for exemption.  Ex. 2, ¶ 4.  Specifically, BC requested that for medical exemptions, to please provide, at minimum, "a letter from your healthcare provider that clearly states the contraindication to vaccination" and "for religious documentation, please provide a letter from your spiritual leader or advisor that clearly states the religious reasoning for exemption."  Id.  Agaj replied that he did not have access to such documents.  Id.

On July 8, 2021, the Office for Institutional Diversity emailed Mr. Agaj telling him that his request for an exemption to the University's vaccination requirements has been denied, as "the Information [he] provided does not adequately support a religious exemption".  Aff., p. 1; Ex. 4, p. 1.  Two weeks later, on July 26, 2021, Mr. Agaj submitted a new request for exemption.  Id.  That request stated that "i rely only on folk medicine of Ethnobotany and religious prayer for my medical care" and that Bogomils "forbids me to have a covid-19 Vaccine."  Aff. p.1., Ex.

4, p. 2. The request stated in substance that the vaccine was a health risk for healthy people, that his Bogomils religion forbids him to take anything that risks his health and spiritual well-being, and that his body is his temple and it's his duty to keep it pure and free from filth. Ex. 4, p. 2. Agaj also referred to the First Amendment, Article 9 of the Human Rights Act 1998 and the Bill of Rights. Id. Agaj again did not submit the required documentation supporting the exemption. Id.

On August 6, 2021, David Trainor, Vice President, Human Resources, emailed Agaj informing him that his vaccination exemption request was denied. Ex. 2, ¶ 5. Trainor stated that one of the factors for the denial was Agaj's inadequate explanation of the basis for his request and that an undue hardship would be posed upon Boston College by allowing Agaj to be unvaccinated. Id. Trainor's message also informed Agaj that if he chose to be vaccinated, Agaj needed to submit proof of vaccination by August 13, 2021; if Agaj failed to provide proof of vaccination, he would no longer be permitted on campus. Id. Agaj did not get vaccinated. Ex. 5, p. 3. On August 31, 2021, Agaj's employment was terminated. Aff. p. 2.

## PROCEDURAL HISTORY

On September 29, 2021, Agaj filed a complaint with the MCAD alleging that Boston College discriminated against him on the basis of his creed in violation of M.G.L. c. 151B, Section 4, Paragraphs 1, 1A and Title VII of the Civil Rights Act of 1964. Ex. 2. On November 28, 2023, the MCAD Investigating Commissioner issued a Lack of Probable Cause disposition and dismissed Agaj's Complaint. Ex. 5, p. 1. On January 30, 2024, the MCAD affirmed the dismissal. Ex. 6.

## ARGUMENT

Under the Supreme Court's standard, "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'" Sanchez v. Pereira–Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (citations omitted).

I. **THE COURT SHOULD DISMISS AGAJ'S CLAIMS FOR VIOLATION OF TITLE VII AND MGL c. 151B, § 4 FOR FAILURE TO STATE A CLAIM**

Title VII and Chapter 151(B) make it unlawful for an employer to discriminate against an employee based on his or her religion. Robert v. Raytheon Tech. Corp., No. 23-CV-12206-NMG, 2024 WL 1809407, at *4 (D. Mass. Apr. 25, 2024) (citing 42 U.S.C. §§ 2000e-2(a); Mass. Gen. Laws ch. 151B, § 4(1)). Title VII claims of religious discrimination are analyzed under a two-part framework. Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004), cert. denied, 545 U.S. 1131. First, a plaintiff must make a *prima facie* case "that a *bona fide* religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Id. Second, if the plaintiff establishes a *prima facie* case, "the burden then shifts to the employer to show that it offered a reasonable accommodation," or if it did not, "that doing so would have resulted in undue hardship." Id.

5

The framework for evaluating religious discrimination claims under Chapter 151B is similar. Robert, 2024 WL 1809407, at *4 (citing Mekonnen v. OTG Mgmt., LLC, 394 F. Supp. 3d 134, 157 (D. Mass. 2019)). In applying M.G.L. c. 151B, § 4(1A), "[i]nitially, the employee bears the burden of proving that the employer required him to violate a religious practice compelled by his sincerely held belief." Massachusetts Bay Transp. Auth. v. Massachusetts Comm'n Against Discrimination, 450 Mass. 327, 335–36 (2008) (citing Cloutier, 390 F.3d at 137). "The employee must also demonstrate that he provided his employer with the required advance notice of his religious obligation (ten days)." Id. (citing M.G.L. c. 151B, § 4(1A)). "Once the employee establishes these prerequisites, the burden shifts to the employer either to accommodate the complainant or "to prove that accommodation of the complainant's religious obligations would impose on the employer an undue hardship ...." Id. (citing New York & Mass. Motor Serv., Inc. v. Massachusetts Comm'n Against Discrimination, 401 Mass. 566, 576 (1988)).

### A. Mr. Agaj Cannot Establish a Prima Face Case of Religious Discrimination Because He Has Not Plausibly Pled A Bona Fide Religious Practice

To establish a prima facie case of religious discrimination based on failure to accommodate, a plaintiff must assert "that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 12 (1st Cir. 2012) (quoting Cloutier, 390 F.3d at 133). To qualify as a bona fide religious practice, plaintiff must show "both that the belief or practice is religious and that it is sincerely held." EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 56 (1st Cir. 2002). "Title VII does not mandate an employer or labor organization to accommodate what amounts to a 'purely personal preference.'" Union Independiente, 279 F.3d at 56 (quoting Vetter v. Farmland Indus.,

Inc., 120 F.3d 749, 751 (8th Cir. 1997)).  "A belief is religious if it 'addresses fundamental and ultimate questions having to do with deep and imponderable matters,' are 'comprehensive in nature,' consisting of 'a belief-system as opposed to an isolated teaching,' and are accompanied by 'certain formal and external signs.'"  Thornton v. Ipsen Biopharmaceuticals, Inc., No. CV 23-11171-JCB, 2023 WL 7116739, at *3 (D. Mass. Oct. 26, 2023) (quoting Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania, 877 F.3d 487, 491 (3d Cir. 2017)).

"A plaintiff who claims exemption from an employment requirement for religious reasons must plead some modicum of plausible facts sufficient to create an inference that the conflict arises from some specific religious tenet or principle."  Griffin v. Massachusetts Dep't of Revenue, No. 22-CV-11991-FDS, 2023 WL 4685942, at *6 (D. Mass. July 20, 2023).  Agaj has failed to do that here.  His June 23, 2021 exemption request did not even identify his religion.  It stated only that vaccination "goes against religius believes [sic]."  Ex. 3.  Likewise, his request for a medical exemption did not indicate how vaccination was contraindicated by any medical condition of Mr. Agaj and did not include any letter from a treating physician.  Id.  In response to BC's inquiry for documentation to support his exemption request, Agaj admits that he did not submit the information requested.[4]  Ex. 2, ¶ 4.

---

[4] The EEOC's Guidance provides that "[w]here the accommodation request itself does not provide enough information to enable the employer to make a determination, it is entitled to make a limited inquiry into the facts and circumstances of the employee's claim that the belief or practice at issue is religious and sincerely held, and that the belief or practice gives rise to the need for the accommodation." See EEOC, Section 12: Religious Discrimination at 12-IV(A)(2), https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref224  (last visited June 3, 2024).  The Guidance also provides that "the employer would be justified in making a limited factual inquiry and seeking additional supporting information." Id.  Further, an employee who fails to cooperate with an employer's reasonable request for verification of the sincerity or religious nature of a professed belief "risks losing any subsequent claim that the employer improperly denied an accommodation." Id.

Likewise, Mr. Agaj's second exemption request did not explain how vaccination violated any tenet or practice of the Bogomils religion, but stated that his faith in Bogomils "forbids [him] from getting the Covid vaccine" and "forbits [sic] me to take any thing that risks my health and spiritual wellbeing." Ex. 4, p. 2.  Moreover, his statements suggest that his belief was more of a personal preference than a belief rooted in his religion.  His statements that "[t]he Covid -19 vaccine is a Health Risk for healthy people" and "it's his duty to keep [his body] pure and free from filth" sound in personal or philosophical choice.  See Fallon, 877 F.3d at 492 (affirming dismissal of complaint alleging religious discrimination under Title VII where plaintiff's beliefs that one should not harm their own body and that the vaccine did more harm than good were more medical or moral than religious); McCarthy v. Bos. Med. Ctr., No. CV 22-11886-RGS, 2024 WL 185392, at *1 (D. Mass. Jan. 17, 2024) (granting Rule 12(c) motion where plaintiff's exemption request stating "this vaccine would violate the principles laid out in God's word, I believe my body is a temple for the Holy Spirit" did not state a bona fide religious belief but "the dictates of her own conscience").  Not only did Agaj's second exemption request fail to elucidate his religious belief or practice, but he once again submitted no documentation or support for his request for a medical and religious exemption.  Ex. 4, p. 2.

Agaj's conclusory allegations that vaccination "goes against my religius belives faith healing" [sic] and that his religion "forbids [him] from getting the Covid vaccine" are insufficient to establish a prima facie case that his refusal to get the COVID-19 vaccine was based on a religious practice or belief.  In Griffin, 2023 WL 4685942, at *6, the Court concluded "that a simple *ipse dixit* by the plaintiff—'this employment requirement conflicts with my religion'—is not sufficient to state a claim:

> Those statements are nothing more than a bare representation that the basis of plaintiff's objection to vaccination derives from a religious belief. Plaintiff does

>not describe her religious beliefs or principles in any meaningful way, or how they relate to vaccines generally, or the COVID-19 vaccine specifically. Put another way, she does not allege that her religion requires her to observe certain medical limitations that include a refusal to take vaccines, or certain types of vaccines. And there is no specific indication as to how her beliefs or principles have affected other medical decisions in the past.

Griffin, 2023 WL 4685942, at *7.  Similarly, in Thornton, the Court held that plaintiff's statements that she was prevented from receiving the COVID-19 vaccine because "it would violate my sincerely held religious beliefs and jeopardize my soul and eternal salvation to go against God by defiling my perfectly created body that He created in His image" failed to state a plausible claim under Title VII or Chapter 151B.  Thornton, 2023 WL 7116739, at *4.  The Thornton Court acknowledged that "Courts faced with the same or similar articulated belief as Thornton's have consistently held that such a conviction is not a bona fide religious belief but instead merely a 'personal belief' or 'isolated teaching.'"  Id. (collecting cases).

As Agaj's exemption requests do not describe his religious beliefs or principles in any meaningful way, how they relate to vaccines generally, or the COVID-19 vaccine specifically, he has failed to plead that his employer's vaccination requirement conflicted with a bona fide religious practice and his claims must be dismissed.  Griffin, 2023 WL 4685942, at *7; Thornton, 2023 WL 7116739, at *4; Robert, 2024 WL 1809407, at *4 (dismissing complaint where plaintiff broadly alleged that Raytheon's vaccination and testing requirements contravened his sincerely held religious beliefs but did not explain what religious belief he held); McCarthy, 2024 WL 185392, at *1 (granting Rule 12(c) motion where "[n]othing in the request for a religious exemption indicates that McCarthy's religion inherently conflicts with obtaining COVID-19 vaccination").

9

### B. Mr. Agaj Cannot Establish a Prima Face Case of Religious Discrimination Because He Has Not Plausibly Pled That His Religious Practice Was the Basis for His Termination

Plaintiff's religious discrimination claim should also be dismissed because he fails plausibly to make out a prima facie case that his "religious practice was the basis for the adverse employment decision." See Cloutier v. Costco Wholesale, 311 F. Supp. 2d 190, 197 (D. Mass.), aff'd on other grounds sub nom. Cloutier v. Costco Wholesale Corp., 390 F.3d 126 (1st Cir. 2004), cert. denied, 545 U.S. 1131.  Boston College's vaccination requirement arose in the context of a pandemic that resulted in widespread illness and death throughout the Commonwealth and the globe.  Boston College's vaccination requirement applied to all students, faculty, and staff and is clearly neutral on its face.  Ex. 1.  Mr. Agaj's MCAD Complaint outright admits that he was advised that his exemption request had been denied – not because of his religion – but because he had failed to submit the requested information to support the request.[5] See Ex. 2, ¶ 5.  In Robert v. Raytheon Tech. Corp., the Court dismissed plaintiff's religious discrimination claims under Title VII and 151B where the plaintiff "acknowledge[d] that his refusal to comply with Raytheon's testing requirements, not his religion, was the reason for his termination." 2024 WL 1809407, at *5 (citation omitted).  The same result is warranted here.

### II. THE COURT SHOULD DISMISS AGAJ'S REMAINING CLAIMS – TO THE EXTENT THEY ARE CLAIMS – FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND/OR FAILURE TO STATE A CLAIM

### A. Agaj's Allegations of Discrimination and Retaliation Not Alleged in His MCAD Complaint Must Be Dismissed For Failure to Exhaust Administrative Remedies

---

[5] The denial was also based on "the undue hardship that would follow from permitting unvaccinated faculty and staff on campus, with potentially serious health consequences for all members of the Boston College community." Ex. 2, ¶ 5.  Even if Agaj could establish a prima facie case of religious discrimination, the accommodation he requested would impose an undue hardship on BC.

"Before filing a civil suit in federal court [for employment discrimination], an employee must first exhaust the administrative process by setting forth the particulars of h[is] claim in an administrative charge." Rucker v. Harvard T.H. Chan Sch. of Pub. Health, No. CV 20-11761-NMG, 2021 WL 735809, at *2 (D. Mass. Feb. 25, 2021) (citing Pelletier v. Town of Somerset, 458 Mass. 504, 514 (2010) (as applied to claims under Chapter 151B); Jorge v. Rumsfeld, 404 F.3d 556, 564–65 (1st Cir. 2005) (as applied to claims under Title VII)).  This requirement is jurisdictional, and failure to exhaust compels dismissal of the Complaint. See Everett v. 357 Corp., 453 Mass. 585, 600 (2009).

Agaj's Affidavit of Fact includes several allegations which do not appear in his MCAD Complaint.  For example, the Affidavit states that Boston College discriminated "against [his] culture and origins as legal immigrant minority." Aff., p. 2.  He also alleges that Boston College engaged in "harassment, coercion, intimidation, … and retaliation on the basis of medical and sincerely held religious beliefs." Id.  Agaj's MCAD Complaint does not contain any of these allegations. In addition, Agaj does not allege any facts to suggest that the alleged retaliation occurred as result of the filing of his MCAD complaint.  See Najih v. Avis Budget Grp., Inc., No. CIV.A. 15-10081-NMG, 2015 WL 1292739, at *2 (D. Mass. Mar. 20, 2015) ("Retaliation claims may be raised for the first time in federal court only if they arose in connection with the filing of an administrative complaint after it has been filed").  Indeed, as Agaj filed his MCAD Complaint *after* his termination, he cannot plausibly or logically plead retaliation.  Accordingly, to the extent the assertions in his Affidavit are considered claims, this Court does not have jurisdiction to consider them and they must be dismissed. Rucker, 2021 WL 735809, at *3 (dismissing hostile work environment allegations for failure to exhaust the administrative process).  Moreover, even if Agaj had raised these allegations in his MCAD Complaint, his

11

Affidavit does not plead sufficient facts to support them and they must be dismissed for failure to state a claim.

### B.     Agaj's Miscellaneous "Claims" Must be Dismissed For Failure to State a Claim

Agaj's Affidavit also includes a list of allegations which – to the extent they are intended to be claims – must be dismissed for the reasons set forth below.

- BC "violation [his] privacy":  Agaj does not allege what private facts were gathered, disseminated, or how it interfered with his privacy.  Branyan v. Sw. Airlines Co., 105 F. Supp. 3d 120, 126 (D. Mass. 2015) (citing Nelson v. Salem State Coll., 446 Mass. 525, 536 (2006)).

- BC "made false representations" and "showed intend *[sic]* to deceive":  Agaj has not plead any specific misrepresentation that he relied on to his detriment.  Balles v. Babcock Power Inc., 476 Mass. 565, 573 (2017) (citations omitted).

- BC "violated bona fide good faith":  There is no such cause of action.

- BC "tried under duress to make me resign":  There is no such cause of action.

- BC "put a barrier to [his] employment by terminating me as unvaccinated, but on the other hand allowing unvaccinated vendors, contractors and sellers to operate and access the campus and work violating my equal opportunity act."  Vendors, contractors and sellers are not employees of Boston College and are therefore not similarly situated to Agaj.

Agaj cites DiCapua v. City of New York, 2023 NYLJ Lexis 2465, at *1 (N.Y. Sup. Ct. Sept. 18, 2023), where city educators sued the City of New York after city officials rejected their claims for a religious exemption to the vaccination mandate imposed on all city employees.  The Court found that the City of New York's Reasonable Accommodation Appeal Panel's decision to deny the exemptions of classroom teachers based on an undue hardship, without any further evidence of individualized analysis, was "arbitrary, capricious, and unreasonable."  Id. at *35. Unlike the mandate at Boson College, which was required of *all students and employees*, the mandate in DiCapua was imposed only on City employees.  This weighed heavily in the Court's

<s>

decision, as it found "no rational basis for not allowing unvaccinated classroom teachers in amongst an admitted population of primarily unvaccinated students." Id.

## CONCLUSION

Agaj has failed to plead sufficient facts to state cognizable claims. His Affidavit of Fact must be dismissed under Fed R. Civ. P. 12(b)(6).

Respectfully submitted,

TRUSTEES OF BOSTON COLLEGE

By its attorneys,

*/s/Alan D. Rose*
Alan D. Rose (BBO # 427280)
Meredith Wilson Doty (BBO # 652220)
ROSE LAW PARTNERS LLP
One Beacon Street, 23rd Floor
Boston, Massachusetts 02108
Telephone: (617) 536-0040
Facsimile: (617) 536-4400
adr@rose-law.net
mwd@rose-law.net

Date: June 3, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I caused this document to be filed through the ECF system and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper and/or electronic copies will be sent to those indicated as non-registered participants.

*/s/Alan D. Rose*
Alan D. Rose

Date:  June 3, 2024

</s>