**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| AVENIR AGAJ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-10884-JEK |
| | ) | |
| BOSTON COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR A JURY TRIAL

**KOBICK, J.**

Plaintiff Avenir Agaj, who is proceeding *pro se*, worked as a landscaper for defendant Boston College from October 2020 to August 2021, when his employment was terminated because, in violation of the College's policy, he refused on religious grounds to be vaccinated against COVID-19. Agaj asserts that Boston College's refusal to grant him a religious exemption from its policy amounted to religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and M.G.L. c. 151B, § 4. Pending before the Court are Boston College's motion to dismiss the complaint and Agaj's motion for a jury trial and recusal. The motion to dismiss will be granted in part and denied in part. Agaj has plausibly alleged claims of religious discrimination under Title VII and M.G.L. c. 151B, § 4, but to the extent he seeks to assert other claims challenging his termination, those claims will be dismissed for failure to exhaust administrative remedies or failure to state a claim upon which relief can be granted. Agaj's motion will be denied.

**BACKGROUND**

The following facts, drawn from the complaint and the documents expressly referenced therein, are accepted as true for purposes of the motion to dismiss. Agaj was hired by Boston College to work as a landscaper on October 19, 2020. *See* ECF 1, at 1. On April 23, 2021, he received an email from the President of Boston College, addressed to the broader Boston College community, announcing that the university would "require all students, faculty, and staff to be fully vaccinated (with FDA-approved vaccines) against COVID-19 before participating in any on-campus activity related to the 2021-2022 academic year," but that "[e]xceptions w[ould] be granted for legitimate religious and medical reasons." ECF 20-1, at 1; *see* ECF 1, at 1. Agaj thereafter submitted two requests for an exemption from this requirement. *See* ECF 1, at 1.

In his first request, dated June 23, 2021, Agaj sought a medical and religious exemption on grounds that (1) receiving the vaccine "would have an adverse effect on [his] immune syste[m]" in the "medium and long term," (2) receiving the vaccine would go "against [his] religi[o]us beli[efs]" in "faith healing," and (3) "[a]s long as i[n]demnity for vaccines [was] in place [he did not] feel safe having one." ECF 20-3, at 2; *see* ECF 1, at 1. This request was denied on July 8, 2021 because, "[i]n consultation with campus ministry," Boston College "concluded that the information [Agaj] provided d[id] not adequately support a religious exemption." ECF 23-1, at 74; ECF 1, at 1.

Agaj's second request, dated July 25, 2021, described the basis for his request for a medical and religious exemption in greater detail. *See* ECF 1, at 1; ECF 20-4, at 3. Agaj stated that his "sincere religious held beliefs as practicant, believer and desc[e]ndant of the faith of Bogomils . . . forb[ade] [him] to have" the COVID-19 vaccine. ECF 20-4, at 3 (capitalization omitted). He indicated that he relied "only on Folk Medicine of Ethnobotany and Religious Prayer for [his]

medical care," and that the "way the [COVID]-19 vaccine [was] made and distributed [went] against [his] Faith and Morals." *Id.* He stated that, in his view, the COVID-19 vaccine posed a "Health Risk for healthy people," and that his "religious [beliefs] as [a] Bogomil" forbade him to "take anything that risk[ed] [his] health and spiritual wellbeing." *Id.* (capitalization omitted). Because his "body is [his] Temple," he explained, "it is [his] duty an[d] obligation to keep it pure [and] free from filth." *Id.*

On August 6, 2021, David Trainor, the Vice President of Human Resources at Boston College, sent an email to Agaj with the subject line "COVID-19 Vaccination Exemption Denial." ECF 23-1, at 86. The email did not address the substance of Agaj's exemption request but stated that Boston College had "reviewed all requests for exemption," and that denials "were based on a number of factors, including inadequate information or explanation of the basis for the request, and the undue hardship that would follow from permitting unvaccinated faculty and staff on campus, with potentially serious health consequences for all members of the Boston College community." *Id.* The email explained that, if Agaj chose to be vaccinated, he was required to submit proof of vaccination by August 13, 2021, and that failure to submit proof of vaccination would preclude him from entering campus. *Id.*

Agaj did not receive the COVID-19 vaccine or submit proof of vaccination. *See* ECF 1, at 2; ECF 20-2, at 2. Accordingly, on August 13, 2021, Trainor sent Agaj another email, informing him that, effective August 14, 2021, he was prohibited from accessing Boston College's campus or his workspace. *See* ECF 23-1, at 87. Later that month, Agaj was fired, with the termination letter stating that Agaj had been "involuntarily separated" from his job as a landscape worker, effective August 31, 2021. ECF 23-1, at 146; *see* ECF 1, at 2.

Agaj filed a complaint against Boston College with the Massachusetts Commission Against Discrimination ("MCAD"), alleging religious discrimination in violation of Title VII and M.G.L. c. 151B, § 4. *See* ECF 20-2, at 2; ECF 1, at 2. Two years later, MCAD determined, pursuant to 804 Code Mass. Regs. 1.08(1)(f)(2), that there was "insufficient evidence to support a determination of probable cause to credit the allegations of the complaint." ECF 20-5, at 1; *see* ECF 1, at 2. Agaj appealed, and the investigating commissioner affirmed the dismissal on January 30, 2024. *See* ECF 20-6, at 2; ECF 1, at 2.

Agaj brought this lawsuit against Boston College in April 2024. His complaint asserts claims of religious discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a), and M.G.L. c. 151B, § 4(1A). *See* ECF 1, at 2. It also alleges that Boston College discriminated against him as a "legal immigrant minority," violated his privacy, made false representations, intended to deceive him, tried to make him resign under duress, and "engaged in haras[s]ment, coer[c]ion, intimidation, discrimination, and retaliation on the basis of medical and sincerely held religious beliefs." *Id.* (capitalization omitted). Boston College moved to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6), ECF 19, and Agaj soon after filed a motion seeking an immediate jury trial, ECF 31.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted.'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While

legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* at 679. In reviewing the motion, the Court may consider "'documents incorporated

by reference in [the complaint], matters of public record, and other matters susceptible to judicial

notice.'" *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original and quotation

marks omitted). Where, as here, the plaintiff is proceeding *pro se*, the Court construes the

complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

### I.        Religious Discrimination Claims.

Agaj primarily asserts that Boston College's failure to accommodate his sincerely held

religious beliefs by granting him an exemption from its vaccine requirement, and its subsequent

termination of his employment when he chose not to receive the vaccine, constituted religious

discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a), and M.G.L. c. 151B, § 4(1A). To

make out a claim of religious discrimination under the statutes,[1] Agaj "must first show 'that a bona

fide religious practice conflicts with an employment requirement and was the reason for the

adverse employment action.'" *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir.

2024) (quoting *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023)). If Agaj makes that showing, the

burden shifts to Boston College "to show that it 'offered a reasonable accommodation or, if it did

not offer an accommodation, that doing so would have resulted in undue hardship.'" *Id.* (quoting

*Lowe*, 68 F.4th at 719).

---

[1] Religious discrimination claims under Title VII and Chapter 151B are generally analyzed under the same framework. *See Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 131-32 (1st Cir. 2004); *Brown v. F.L. Roberts & Co., Inc.*, 452 Mass. 674, 676-77 (2008).

Boston College contends that Agaj's claims do not satisfy this standard because he has not plausibly alleged that his decision not to be vaccinated was rooted in a bona fide religious practice. The Court agrees that Agaj's first exemption request was insufficient to put Boston College on notice of a bona fide religious practice that conflicted with its COVID-19 vaccine requirement. That request asserted, in conclusory fashion, that receiving the vaccine would go "against [Agaj's] religi[o]us beli[efs]." *See* ECF 20, at 7; ECF 20-3, at 2. It did not identify Agaj's religion, nor did it identify "a specific [religious] tenet or principle that does not permit [Agaj] to be vaccinated." *Griffin v. Mass. Dep't of Revenue*, No. 22-cv-11991-FDS, 2023 WL 4685942, at *7 (D. Mass. July 20, 2023), *appeal pending*, No. 23-1668 (1st Cir.). A "simple *ipse dixit* by the plaintiff—'this employment requirement conflicts with my religion'—is not sufficient to allege" a claim of religious discrimination. *Id.* at *6.

Agaj's second exemption request, however, did adequately notify Boston College that its vaccine requirement conflicted with his bona fide religious practice. The request identified Agaj as belonging to the Bogomil faith,[2] and it stated that his "religious [beliefs]" prohibited him from taking anything that "risk[ed] [his] health and spiritual wellbeing." ECF 20-4, at 3. Agaj averred that, in his view and in conflict with that belief, the COVID-19 vaccine posed a risk to his health. *Id.* The request further identified a tenet of the Bogomil faith—namely, that a person's "body is [his] Temple" and "it is [his] duty an[d] obligation to keep it pure [and] free from filth"—that

---

[2] Attached to Agaj's opposition to the motion to dismiss is a document that describes the Bogomil faith as follows: "Bogomilism was a dualist religiopolitical sect founded in the First Bulgarian Empire by the priest Bogomil during the reign of Tsar Peter I in the 10th century. . . . The Bogomils called for a return to what they considered to be early Christianity, rejecting the ecclesiastical hierarchy, and their primary political tendencies were resistance to the state and church authorities. . . . The Bogomils were dualists [and] . . . did not use the cross nor build churches, preferring to perform rituals outdoors." ECF 23-1, at 36.

conflicted with the vaccine mandate. *Id.* And the request indicated that "[t]he way the [COVID]-19 vaccine [was] made and distributed [went] against [Agaj's] [f]aith and [m]orals." *Id.*

The First Circuit has made clear that "'[i]f an accommodation request can be read on its face as plausibly based in part on an aspect of the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss.'" *Bazinet*, 113 F.4th at 17 (quoting *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1011 (7th Cir. 2024)). Agaj's second exemption request clears that hurdle. It conveyed to Boston College that Agaj believed the COVID-19 vaccine would pose a risk to his health, and that the College's vaccination requirement thus conflicted with a tenet of the Bogomil faith requiring adherents to abstain from taking action that would pose a risk to their health or spiritual wellbeing. *See id.* at 16 (the plaintiff established a conflicting bona fide religious belief when she "grounded her objection to taking the vaccine in a religious belief connecting the COVID-19 vaccine to opposition to abortion"). It also conveyed a religious belief that Agaj must keep his body free from impurities, and that taking the vaccine would conflict with that belief. The request thus put Boston College on notice that Agaj's adherence to the tenets of his faith was inconsistent with its vaccination policy. At this early stage in the case, that is enough to plausibly allege that Boston College's failure to accommodate Agaj's sincerely held religious beliefs, and its subsequent termination of his employment for failure to comply with its vaccine requirement, amounted to religious discrimination in violation of Title VII and M.G.L. c. 151B, § 4.

Boston College has two principal rejoinders. First, it contends that Agaj's statements in his second request "suggest[ed] that his belief was more of a personal preference than a belief rooted in his religion." ECF 20, at 8. But a person may object to an employment requirement on more than one basis, and "the mere fact that there is 'overlap between a religious and [personal] view does not [necessarily] place [the view] outside the scope of Title VII's religious protections.'"

*Bazinet*, 113 F.4th at 17 (quoting *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024)). The law, moreover, "does not require that a religious practice or belief . . . be 'acceptable, logical, consistent, or comprehensible to others.'" *Id.* at 16 (quoting *EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*, 279 F.3d 49, 56 (1st Cir. 2002)). Agaj's claims of discrimination are not foreclosed because his religious beliefs may be uncommon or because those beliefs may also overlap with his personal preferences.

Second, Boston College urges that, even if Agaj plausibly alleges that his decision not to be vaccinated was rooted in a bona fide religious practice, he does not plausibly allege that his religious practice was the basis for the adverse employment action—*i.e.*, his termination. In support, Boston College relies on *Robert v. Raytheon Technologies Corporation*, which dismissed religious discrimination claims because the plaintiff's "refusal to comply with [his employer's] [COVID-19] testing requirements, not his religion, was the reason for his termination." *See* No. 23-CV-12206-NMG, 2024 WL 1809407, at *5 (D. Mass. Apr. 25, 2024). The *Robert* case is inapposite. The plaintiff in *Robert* had received a religious exemption from his employer's vaccination requirement but was also subject to a weekly COVID-19 testing requirement. *Id.* at *1. He did not allege that he sought a religious exemption from the testing protocol, nor did he identify any religious belief that conflicted with the testing requirement. *Id.* at *4. Thus, he "acknowledge[d] that his refusal to comply with [the] testing requirements, not his religion, was the reason for his termination." *Id.* at *5. Agaj, in contrast, sought a religious exemption from his employer's policy, detailing his religious beliefs and justification. *See* ECF 20-4, at 3. Absent an exemption, Agaj could not comply with Boston College's vaccine requirement without transgressing the religious beliefs he identifies in his complaint. Agaj chose not to be vaccinated and was terminated in direct response to that choice. *See* ECF 20-2, at 2. Indeed, Boston College's

termination letter stated that Agaj was "involuntarily separated" from his job because he did not

"provid[e] proof of vaccination as required by the University and therefore [did] not meet" Boston

College's "condition for employment" that he be vaccinated against COVID-19. ECF 23-1, at 146.

Agaj has made a prima facie showing that his bona fide religious beliefs and practice were the

reason for the adverse employment action against him. Boston College's motion to dismiss will,

accordingly, be denied as to Agaj's religious discrimination claims.

## II.      The Remaining Claims.

In addition to his claims of religious discrimination, Agaj also alleges that Boston College

discriminated against him because of his "culture and origins as [a] legal immigrant minority" and

his medical practice of "ethnobotany," violated his privacy, made false representations, intended

to deceive him, tried to make him resign under duress, and "engaged in haras[s]ment, coer[c]ion,

intimidation, discrimination, and retaliation on the basis of medical and sincerely held religious

beliefs." ECF 1, at 2 (capitalization omitted).

Boston College contends that to the extent Agaj's allegations of retaliation and

discrimination based on his status as a "legal immigrant minority," and allegations of retaliation

based on his religious beliefs, constitute distinct claims, the claims must be dismissed for failure

to exhaust administrative remedies. The Court agrees. A party alleging claims of retaliation or

discrimination under Title VII and M.G.L. c. 151B, § 4 generally must file an administrative charge

with MCAD or the Equal Employment Opportunity Commission and exhaust the administrative

process before asserting those claims in state or federal court. *See, e.g.*, *Franceschi v. U.S. Dep't

of Veterans Affs.*, 514 F.3d 81, 85-87 (1st Cir. 2008) (Title VII claims); *Jorge v. Rumsfeld*, 404

F.3d 556, 564-65 (1st Cir. 2005) (same); *Pelletier v. Town of Somerset*, 458 Mass. 504, 514 (2010)

(Chapter 151B claims). Agaj's MCAD complaint alleged religious discrimination, but it did not

allege discrimination or retaliation on the basis of race or national origin or retaliation on the basis

of religion. *See* ECF 20-2 (MCAD complaint); ECF 20-5, at 3 (MCAD investigative disposition describing Agaj's complaint as alleging discrimination "based on his religious creed"). Agaj does not contend that any of the exceptions to the exhaustion requirement—for example, when a plaintiff alleges that he was retaliated against for filing an administrative charge, *see Franceschi*, 514 F.3d at 86-87—apply here. Thus, to the extent Agaj seeks to assert a claim of retaliation or discrimination based on his race or national origin, or retaliation based on religion, those claims will be dismissed for failure to exhaust administrative remedies.

To the extent Agaj seeks to assert a claim of discrimination based on his medical practice of ethnobotany, that claim will be dismissed because Title VII and M.G.L. c. 151B do not forbid discrimination on the basis of medical practice. *See* 42 U.S.C. § 2000e-2(a); M.G.L. c. 151B, §§ 4(1), (1A). And to the extent Agaj's remaining allegations are construed as separate claims, these claims will be dismissed because they are not supported by factual allegations that suggest a plausible entitlement to relief. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (a plaintiff must "first alleg[e] 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of actionable misconduct" for a claim to survive a motion to dismiss (quoting *Twombly*, 550 U.S. at 556)). Boston College's motion to dismiss will therefore be granted as to the remaining claims in Agaj's complaint.

### III.   Agaj's Motion for an Immediate Jury Trial and Recusal.

Agaj filed a separate motion requesting an immediate jury trial and vacatur of any pretrial schedule. As explained to Agaj at the motion hearing, that request will be denied. The Federal Rules of Civil Procedure set forth the process for adjudicating civil actions. Following the partial denial of Boston College's motion to dismiss, Boston College will file a responsive pleading within 14 days. *See* Fed. R. Civ. P. 12(a)(4)(A). The Court will then hold an initial scheduling conference in accordance with Federal Rules of Civil Procedure 16 and 26(f) and Local Rule 16.1. That

scheduling conference will assist the Court in determining an appropriate schedule for pretrial discovery and the filing of dispositive motions.

Agaj's motion also requests that I recuse myself from this matter. The request is premised upon the Court's orders granting Boston College's motion for an extension of time to file a responsive pleading and motion for leave to file a reply brief, *see* ECF 8, ECF 25, as well as the Court's failure to schedule an immediate jury trial. Under 28 U.S.C. § 455(a), a federal judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." In evaluating a request for recusal under this provision, a judge must ask if a reasonable member of the public, "fully informed of all the relevant facts, would fairly question [her] impartiality." *In re United States*, 158 F.3d 26, 31 (1st Cir. 1998) (emphasis omitted). The orders to which Agaj objects would not lead a reasonable member of the public to question my impartiality. They were made in the ordinary course of case management and are not evidence of bias. *See Liteky v. United States,* 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *Fideicomiso de la Tierra del Caño Martin Peña v. Fortuño*, 631 F. Supp. 2d 134, 137 (D.P.R. 2009) ("[D]issatisfaction with a Court's rulings and case management is not grounds for recusal."). Agaj's request for recusal will therefore be denied.

## CONCLUSION AND ORDER

For the foregoing reasons, the defendant's motion to dismiss, ECF 19, is DENIED with respect to the religious discrimination claims under Title VII and M.G.L. c. 151B, § 4, and otherwise GRANTED. The plaintiff's motion for an immediate jury trial, ECF 31, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: November 12, 2024                              UNITED STATES DISTRICT JUDGE