UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVENIR AGAJ,<br>    Plaintiff,<br>v.<br>BOSTON COLLEGE,<br>    Defendant. | Civil Action No. 1:24-cv-10884<br><br>**OPPOSITION TO MOTION TO DETERMINE AND DISCHARGE LIEN** |

  Attorney Jay M. Wolman, prior counsel to Plaintiff Avenir Agaj, objects to Plaintiff's motion to determine and discharge lien (ECF No. 103). There is no basis to discharge the lien and it is premature to determine it.

  As the Court is aware, Attorney Jay Wolman of Randazza Legal Group entered his appearance for Plaintiff on February 19, 2025 (ECF No. 67); less than five months later, on July 7, 2025, the Court granted Attorney Wolman's motion to withdraw (ECF No. 86). At the time of withdrawal, Attorney Wolman filed a customary notice of lien per G.L. c. 221, § 50. (ECF No. 78). Mr. Agaj now asks this Court to determine that Randazza Legal Group (Attorney Wolman's employer) should not be paid for the work Mr. Wolman performed and the scores of hours spent representing Plaintiff. There is no basis to do so, and Mr. Agaj provides none other than to make baseless accusations (shockingly made under penalty of perjury) that Attorney Wolman was bribed by or colluded with Defendant—he did no such thing. *See* **Exhibit A**, Declaration of Jay M. Wolman at ¶ 3. The Court should ignore Plaintiff's meritless allegations.

  As set forth in G.L. c. 221. § 50:

> From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's

cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom.

Attorney Wolman appeared in this proceeding on behalf of Plaintiff, his then-client. Therefore, his firm has a statutory lien on his reasonable fees and expenses should Plaintiff make a recovery by judgment or settlement.[1] "Whether a lawyer is entitled to a lien depends on whether the lawyer has a valid substantive contract or quantum meruit claim for fees" and it "is a question of law rather than equity[.]" *Wilson v. McClure*, 2001 U.S. Dist. LEXIS 23227, at *5 (D. Mass. Sep. 21, 2001). There is no legitimate dispute that there is a valid engagement agreement between Randazza Legal Group and Mr. Agaj; Mr. Agaj himself produced it and he does not argue it was otherwise invalid. (ECF No. 104-1 at 2-19). At this stage, however, determining the amount of lien is premature, as Plaintiff has made no recovery as of yet.[2]

The lien has not been terminated, and Attorney Wolman had good cause to withdraw. "Thus if, for example, withdrawal occurs because of a breakdown in the lawyer-client relationship, illness of the lawyer, or development of an unforeseen, and reasonably not foreseeable, conflict of interest the attorney's lien remains intact." *Wilson,* 2001 U.S. Dist. LEXIS 23227, at *11 (quoting *Phelps Steel, Inc. v. VonDeak*, 24 Mass. App. Ct. 592 (1987)). The factual information (as opposed to Mr. Agaj's imaginations) submitted by Mr. Agaj (ECF Nos. 104 & 104-1) as well as in the July 3, 2025, *ex parte* Declaration of Jay M. Wolman and exhibits thereto demonstrate such a breakdown.

---

[1] While a settlement payment is not a "judgment," a settlement payment in the context of a stipulation of dismissal, renders the lien choate. *See Santander Bank, N.A. v. Warrender*, 760 F.3d 130, 133 (1st Cir. 2014).
[2] If and when the time comes, the appropriate forum will be through fee arbitration as provided by the agreement (ECF No. 104-1 at 7). *See Wilson,* 2001 U.S. Dist. LEXIS 23227 at *5-9.

Sifting through Mr. Agaj's filings, none of his arguments otherwise show there was a lack of good cause for the withdrawal. First, Mr. Agaj claims a "material breach of contract," but his argument is not that Mr. Wolman failed to perform the necessary work on this matter. Rather, he erroneously claims that filing a notice of dismissal at his admitted consent (which was in a writing of May 22, 2025) in the duplicative state case somehow voided the agreement.[3] It does not and there is no reason why it should.

No malpractice occurred. Without evidentiary basis, Mr. Agaj falsely claims that his prior counsel colluded with and was bribed by Boston College. These allegations are purely based on his own imagination and have no rational foundation. It is disheartening that Mr. Agaj reiterated this baseless accusation in his declaration made under penalty of perjury (ECF No. 104-1). There was no collusion, and there was no bribe. *See* Wolman Decl. at ¶ 3. While Mr. Wolman will not delve into his mental impressions in order to continue to otherwise abide his duty of confidentiality to Mr. Agaj, the information submitted by Mr. Agaj shows that the Mr. Wolman stated he "believe[d] BC is right that [the state court case] is improper claim splitting and that [his] other claims there are not well-founded, including barred by the prior District Court proceeding." (ECF No. 104 at 11, quoting email of May 22, 2025). Nothing in that analysis suggests collusion or bribery. Sometimes, a lawyer must tell his client that the client is wrong or that actions the client took as a *pro se* litigant were improper. And it is notable that Mr. Agaj agreed at the time, authorizing the withdrawal.

Mr. Agaj claims Mr. Wolman's performance "fell short", but he identifies no action that the undersigned failed to undertake. His one complaint was that Mr. Wolman assented to a

---

[3] Mr. Agaj was duly and timely notified that such dismissal was filed. All filings have been transmitted to Mr. Agaj. *See* Declaration of Jay M. Wolman at ¶ 4-5. Mr. Agaj clearly possesses a copy of it. (ECF No. 104-1 at 31-32).

standard confidentiality protective order, an order that ensured that anything improperly designated as confidential could have that designation contested. Per Mass. R. Prof. Cond. 1.2(a), a lawyer does not violate his duties "by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his or her client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process." The entry of a standard confidentiality order was a reasonable request that caused no prejudice to Mr. Agaj and he identifies none. Mr. Agaj remains free to challenge any designation, and the confidentiality order does not create automatic sealing of any documents designated as confidential.

Mr. Agaj claims there was disclosure of confidential information harming his defense and the potential outcome of the case. Yet, he identifies no such information nor the alleged harm. There was none. *See* Wolman Decl. at ¶ 7. Once more, this is an unfounded accusation that lacks a tether to reality.

Mr. Agaj claims there was no justification for the withdrawal, that it was done for Mr. Wolman's "own interests and accord[.]" (ECF No. 103 at 3). Mr. Agaj fails to show how withdrawal benefitted Mr. Wolman or Randazza Legal Group. Mr. Agaj's filings show the motion came following Mr. Agaj insisting he would make certain filings directly with the Court, circumventing Mr. Wolman's representation and that Mr. Agaj "welcomed" such withdrawal and that the undersigned had the "right" to do so. (ECF No. 104 at 21). There is no inkling of it being for personal interest or accord; it was on account of the breakdown in the attorney-client relationship. *See* Wolman Decl. at ¶ 8. Rather, Mr. Agaj takes issue that the notice of lien was

filed at all because of its potential impact on retaining new counsel.[4]  It is unreasonable for Mr. Agaj to believe that Mr. Wolman should have performed months of work for no recovery.  The very existence of G.L. c. 221, § 50, confirms that his position is unreasonable.  In fact, Mr. Agaj knew there would be such a lien at the time of retention.  (ECF No. 104-1 at 9).  As set forth above, where there was good cause for the withdrawal, including the breakdown in the attorney-client relationship, the lien is not voided.

Thus, nothing in Mr. Agaj's motion warrants dissolution of the lien.  Mr. Agaj makes further allegations in his purported declaration (ECF No. 104) that similarly lack foundation or a basis to dissolve the lien.

First, he argues that Mr. Wolman refused to extend a deadline.  (ECF No. 104 at 2).  In support, he refers to correspondence regarding amending the complaint, the response to which was an inquiry as to what the amendment would entail.  (*Id.* at 2-3).  Mr. Agaj submits nothing further in support of the so-called refusal to extend a deadline.  All he shows is that he wanted the deadline extended to amend the complaint without any demonstrable need for such extension.  No other purported refusals are alleged.  Thus, there was no failure in action.

His next accusation is that because Defendant did not respond to requests for production within 30 days, Mr. Wolman was somehow biased and was bribed.  (ECF No. 104 at 6-7).  However, such responses were made on May 7, 2025, with a 23-day extension granted on consent per Mass. R. Prof. Conduct 1.2(a).  Such a short extension was wholly appropriate and does not evidence bias or bribery;[5] instead, it reflects the civility expected of legal professionals.

---

[4] Nor should the lien interfere with retaining counsel.  Any prevailing attorney would be entitled to their reasonable fees irrespective of any lien of Mr. Wolman.  42 U.S.C § 2000e-5(k).
[5] Mr. Agaj was provided the entire communication file and knew, prior to his false accusation, how that extension courtesy came about.  *See* Wolman Decl. at ¶ 6.

Similarly, he makes a false accusation of collusion because Mr. Wolman did not file a motion to compel production of documents that were already being produced. (ECF No. 104 at 8). He fails to show that such a motion would have served any purpose; Defendant completed its production in a reasonably timely manner without any prejudice to Mr. Agaj.

He asserts that Mr. Wolman was not, contrary to the reproduced communication, surprised to learn of the then-pending Suffolk Superior Court case. *Id.* However, the referenced interrogatory does not indicate that the state court matter was then live, and there was no reason for Mr. Wolman to believe it was. *See* Wolman Decl. at ¶ 9. Moreover, it is telling that Mr. Agaj points to a vague allusion to that case rather than direct communications by Mr. Agaj to the undersigned that such matter was then-pending.

Mr. Agaj claims missed deadlines, failure to properly investigate, provision of inadequate legal advice, conflicts of interest, and settling or attempting to settle without consent. (ECF No. 104 at 26-27). What deadlines were missed? What actual (rather than imagined) conflicts? How was the advice inadequate? What settlement was made or attempted without his consent? He offers no support for any of these accusations because he cannot do so. Again, these alleged deficiencies occurred only in his imagination. He draws attention to opportunities to make decisions when he himself reproduced that dismissal of the state case was done at his explicit consent. A brief discovery response deadline was well within the undersigned's prerogative, and Mr. Agaj was fully informed of all significant developments. He claims that Mr. Wolman lied as to dismissal of the state case but cannot point to any false statements. This is because Mr. Wolman made none. Buttressing the fact that Mr. Agaj is misrepresenting events, Mr. Agaj falsely states the state court matter was dismissed with prejudice when his own filing shows it was "without prejudice." (ECF No. 104-1 at 31).

As to the June 6 communications, Mr. Wolman will not comment as they would improperly divulge attorney-client communications.  However, Mr. Wolman will note that it is his practice, consistent with Local Rule 16.1(d) to discuss potential resolution with all clients in matters before this Court, including through the use of the ADR methods of Local Rule 16.4.  *See* Wolman Decl. at ¶ 10.  Further, as a conference with the Court was then-scheduled for July 8, 2025 (ECF No 54), Mr. Wolman had a duty, at timely point before then, to fulfill Local Rule 16.4(b), by conferring with Mr. Agaj regarding potential settlement.

Mr. Agaj was given the complete file, including the documents produced by Defendant.  There was no violation of Rule 1.4; he was seasonably apprised of all developments.  *See* Wolman Decl. at ¶ 11.  There was no neglect, deception, or conflict of interest.  *Id.* at ¶ 12.  At no time did Mr. Wolman seek an out-of-court settlement without Mr. Agaj's consent.[6]  *Id.* at ¶ 13.  At no time did Mr. Wolman weaken Mr. Agaj's position or use coercive tactics.  *Id.* at ¶ 14.  Again, Mr. Agaj fails to identify any false statements because none were made.  *Id.* at ¶ 15.

Simply put, Mr. Agaj shows no breach of duty, no breach of contract, and no reason why the lien should be discharged.  Withdrawal was fully justified.

WHEREFORE the motion to discharge and determine the lien should be denied.

Dated: September 17, 2025                    Respectfully Submitted,

                                                       /s/ Jay M. Wolman
                                                       Jay M. Wolman, BBO# 666053
                                                       jmw@randazza.com
                                                       RANDAZZA LEGAL GROUP, PLLC
                                                       30 Western Avenue
                                                       Gloucester, MA 01930
                                                       Tel: (978) 801-1776

---

[6] Moreover, it is strange that he now claims objection to any possible out of court settlement when he himself made a demand for one, on the record.  (ECF No. 49).

Civil Action No. 1:24-cv-10884

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jay M. Wolman<br>JAY M. WOLMAN