# UNITED STATES DISTRICT COURT

## FOR THE

## DISTRICT COURT OF MASSACHUSETTS

_____

)
AVENIR AGAJ                       )
       Plaintiff         )
                                  )
V.                                )     Civil ACTION No. 1:24 –CV-10884-JEK
                                  )
BOSTON COLLEGE                    )
                                  )
       Defendant        )
                                  )
_____)

**PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' TRUSTEES OF BOSTON COLLEGE MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.**

**PRO SE.**

**Plaintiff AVENIR AGAJ respectfully submits this Memorandum of Law in Opposition to Defendants TRUSTEES of BOSTON COLLEGE Memorandum in Support of its Motion for Summary Judgment. For the reasons set forth below, genuine issues of material facts exist in this case, requiring that Defendants Motion be DENIED.**

**The plaintiff AVENIR AGAJ case should proceed to JURY trial because genuine issues of material fact exist, and the defendant at Boston College is not entitled to judgment as a matter of law.**

**In accordance with the Law, the burden of proof is upon the Defendant Boston College established by substantial and credible evidence that the discharge of the plaintiff Avenir Agaj was attributable to undue hardship.**

The Defendant Boston College had a policy regarding a requirement that all employees be vaccinated against the COVID-19 virus or have an approved exemption as of August 13, 2021.The Defendant Boston College did not disclose to staff that the contractors, vendors, and suppliers will not be required to be vaccinated in order to work on campus nor it disclosed the number of exemptions that would be granted to employees. Defendant Boston College did not have a union with an agreement of the new policy with the employees and was not on the employee handbook.  Defendant Boston College did not provide information sufficient to determine if the policy is uniform on its face or in its application to the plaintiff or other employees. As such, the Defendant Boston College cannot establish that it discharged the plaintiff for undue hardship. The Defendant Boston College also failed to show the claimant was discharged for deliberate misconduct in willful disregard of the employing unit's interest.  The plaintiff explained that by submitting the second request for an exemption within the permitted time frame he was complying with the employer's expectation. Since the employer's e-mail of August 6, 2021, does not indicate which exemption request was denied.

First, Plaintiff's claims fail because he refused to provide the information Boston College reasonably requested to evaluate his exemption request.

1) Response i plaintiff Avenir Agaj REJECT Defendants claim and state the fact as been completely untrue. I twice requested vaccine exemptions my first request was denied and my second request for exemption was not even considered.

Avenir Agaj <agaja@bc.edu> Mon, Jul 26, 07:25

To: <christine.laflamme@bc.edu>

Good morning Christine Avenir Agaj here i am resubmitting my exemption form for covid-19 Vaccine here is a copy have a nice day!

On Wed, Jul 14, 2021 at 12:32, Avenir Agaj <agaja@bc.edu> wrote:

On Wed, Jul 14, 2021 at 10:29, Christine Laflamme <christine.laflamme@bc.edu> wrote:

HI Avenir,please resend your exemption request to accommodation@bc.edu

On Tue, Jun 29, 2021 at 13:11, Christine Laflamme <christine.laflamme@bc.edu> wrote:

Hi Avenir, thank you for sending this. Please let me know if you hear anything in the next day or two. If not, I will reach out to find someone to contact you. Thanks.

On Tue, Jun 29, 2021 at 12:23 PM Avenir Agaj <agaja@bc.edu> wrote: From: Avenir Agaj <agaja@bc.edu>Date: Tue, Jun 29, 2021 at 12:20

Subject: Hi Chistine

To: <accommodations@bc.edu>

I Have uploaded my request for vaccine exemption but so far it has not been approved i again will ask for one. I ask to whoever is in charge to grant me one. I have my reasons not to have one and that should be the end of the matter. .Here is the copy of the form please respect my rights.Best Regards Avenir Agaj

 Christine Laflamme <christine.laflamme@bc.edu> Thu, Jul 29, 2021 at 10:24 AM

Reply-to: christine.laflamme@bc.edu

To: Patricia Lowe <narcisse@bc.edu>

Cc: Avenir Agaj <agaja@bc.edu>

## Hi Patricia,

## Just wanted to check in on Avenir's exemption (cc'd on this email). He said that he had resubmitted the form but hadn't heard anything. If you need a copy of the form or anything additional, please let him know. Thanks.

-----------------------------------------

Chris Laflamme

Manager, Human Resources

Facilities Business Service Center, Boston College

(617) 552-0325

fax (617) 830-830

FROM PATRICIA LOWE, NO REPLY!!!

Second, his objections to Boston College's vaccine mandate are not religious in nature, but rather are based upon his own personal beliefs, medical concerns, and skepticism towards the COVID-19 vaccine.

2) Response i plaintiff Avenir Agaj REJECT Defendants claim and state the fact as been completely untrue, the Defendant statement proves that he has ANTI-THEISM views engages persistent religion discrimination on BOGOMILISM and medical practice ETHNOBOTANY. The Plaintiff Avenir Agaj has a sincerely held religious belief in a named religion of BOGOMIL and medical practice ETHNOBOTANY which prevents me from receiving medicines, including vaccinations, which are not found in nature. The plaintiff has always followed his religion Bogomil and has not received other vaccinations in the past. The defendant cannot challenge the theological validity of my beliefs. My exemption form request state the following:

1) Please grant me an exemption because i rely only on Folk Medicine of Ethnobotany and Religious Prayer for my medical care.

2) I D o Declare that my sincere religious held beliefs as practicant, believer and descendant of the faith of BOGOMILS, which forbids me to have a covid –19 vaccine.

3)The way the covid –19 vaccine is made and distributed goes against my Faith and Morals.

4)The Covid–19 is a Health Risk for healthy people.

5)My religious beliefs as BOGOMIL forbids me to take anything that risks my health and spiritual wellbeing.

6)My body is my Temple it is my duty an obligation to keep it pure, free from filth.

7)May i also remind you again of my rights under the first Amendments.

8)Article 9 The Human Rights act 1998 the bill of rights.

9)Please Grant Me The Covid –19 Vaccine Exemption.

10)Dated 07/25/2021

Third, even if Plaintiff had completed his exemption request, and even if his beliefs were religious in nature, approval of Plaintiff's request to work on campus unvaccinated would have posed an undue hardship at Boston College. If Boston College permitted Plaintiff to work unvaccinated, he would have posed a threat to the health and safety of Boston College students, faculty and staff members and risked damaging Boston College's reputation of providing a safe environment for students, faculty and staff to learn, live or work during a global pandemic. Accommodating Agaj,

and all other employees who sought a religious exemption, would have also resulted in a substantial increased cost and administrative burden to Boston College.

3) Response i plaintiff Avenir Agaj REJECT Defendants claim and state the fact as being completely untrue, the Defendant statement is baseless. HEERF III Funds, or The American Rescue Plan (ARP)

The American Rescue Act was signed into law on March 11, 2021 and contains funding for higher education. CARES Act I, or HEERF I,II,III  Boston College received its HEERF

Following the American Rescue Plan regulatory guidance, Boston College has prioritized the Boston College had a total of 15,409 students enrolled for the fall 2021 semester. As of December 31, 2022, from the $8,715,557 of the student portion of the HEERF III funding, Boston College distributed grants of up $4,500 to 2,159 undergraduate students with the highest demonstrated financial need as calculated by the FAFSA to cover expenses related to the disruption of campus operations due to the COVID pandemic for a total of $7,437,357.

## FEMA Announces $7.4 million in Reimbursements for BC's COVID-19 Testing Costs

The Federal Emergency Management Agency (FEMA) <u>announced</u> on Tuesday it will award more than $4 million to reimburse Boston College for the cost of testing students, faculty, and staff for COVID-19 between August 2020 and January 2022.

The public assistance grants, which total $4,055,605, compensate the University for the price of administering 195,435 COVID-19 tests during that period.

FEMA also <u>announced</u> in August it would send more than $3.3 million to BC for testing costs between January and May 2021—reimbursing the University about $7.4 million in total.

The $2,222,370 Public Assistance grant will reimburse the private Jesuit research

university in Chestnut Hill for the cost of hiring extra staff and paying existing staff

to operate the school's in-house testing program between July 2020 and June 2021.

Even if i were  to cause the defendant any undue hardship (which i did not) the defendant BOSTON COLLEGE would and have been compensated by FEMA regarding testing and HEERF I,II,III for any other campus operation expense.

Any denial that it would have been not compensated for any undue hardship is an self-incrimination declaration by the defendant BOSTON COLLEGE and admit ion of fraud and embezzlement.

**Boston College**
**Financial Statement Summary**
**2020-2021**

The Fiscal 2021 Boston College ("the University") financial statements illustrate a year of unprecedented net asset growth and balance sheet strength, despite ongoing challenges imposed by the enduring global pandemic. Diligent stewardship of University resources and careful containment of unanticipated pandemic related expenses result in a positive operating bottom line for the fiscal year. The financial statements also reflect a historic endowment return contributing in excess of $1.1 billion to the University's balance sheet as well as government support provided though the CARES Act, used for student aid and University support to off-set COVID-19 related expenses and lost revenue.

The University's total assets at May 3 1, 2021 were $6.4 billion, which was $1,236.3 million or 24% higher than at the end of the previous fiscal year.

THE 2021 was the best year ever for Boston College 1.2 billion in endowment, while Americans were dying they were getting Ritch. Not only they were not paying taxes but taking American tax payers money to by homes an properties with our taxes and rewarding american students by a steady increase in tuition fees year after year.

I have worked for the Defendant for 10 months i never got covid and i never got covid vaccine, that is a fact. The defendant is admitting that the reason i got terminated is because i Plaintiff "might get sick "that is also an unlawful MEDICAL DISCRIMINATION under ADA,

How come the unvaccinated 1000 vendors, contractors (landscapers),suppliers and those 100+ people that Boston College granted exemptions did not cause any undue hardship but i do .I tell you why because they are connected.

**EXAMPLE SUFFOLK CONSTUCTION**

John Fish is the CEO and sole owner of the $7.5 billion (2025 revenues)

Suffolk chairman and CEO and BC Board of Trustees chair will receive President's Medal for Excellence Boston College Board of Trustees Chair John F. Fish, a respected voice and thought leader in business and construction communities, will be honored at the 36th annual Boston College Wall Street Business Leadership Council Tribute Dinner on April 23.

Suffolk Construction, New England's largest general contractor.

SUFFOLK CONSTRUCTION has delivered the 245 Beacon Street integrated science facility for BOSTON COLLEGE.

The $150-million building is the largest single investment in the sciences at Boston College. The Schiller Institute for Integrated Science and Society (The Institute) at Boston College (BC). This innovative space is the cornerstone of a $300 million investment in the sciences at BC, institution of higher education to operate in the city of Boston CONSTRUCTION 2019- DECEMBER 2021.GOD forbids Mr Fish would mandate a vaccine for contractors, vendors and suppliers and stop work and loose a 150 million $ contract, no way. MOSTLY hes contractors work indoor but that does not matter because is him an can do what he wants he is Boston College Board of Trustees Chair John F. Fish and Suffolk CONSTRUCTION CEO.

RULES FOR HE NOT FOR THEE.

The defendant BOSTON COLLEGE also admits that even if i had provided all the documentation requested i still would have been denied an exemption. This shows that he never had the intention to grant me an exemption and a clear INTENTION to deceive under the law that is discrimination.

## FACTS

The Plaintiff worked full time as a Level III landscaper for the employer, a private university, the Defendant Boston COLLEGE from October 19, 2020 until August 13, 2021.

2. In June of 2021, the Defendant Boston College sent an e-mail to all employees suggesting that they become vaccinated against the COVID-19 virus. The vaccination was not a requirement of continued employment at the time. Employees were given the opportunity to submit an exemption based upon a medical or religious exemption in lieu of obtaining the vaccine.

3. The Plaintiff has a sincerely held religious belief in a named religion of BOGOMIL which prevents him from receiving medicines, including vaccinations, which are not found in nature. The claimant has always followed his sincere held religion of BOGOMIL and has not received other vaccinations in the past. He also practices medical Ethnobotany for his medical needs.

4. On June 23, 2021, the Plaintiff Avenir Agaj submitted a request for an exemption to Defendant Boston College for the employer's human resources department ("HR") based on his religious beliefs. The request for an exemption was denied.

5. In July 2021, the Defendant Boston College implemented a mandatory vaccination policy as a condition of continued employment where all employees of the university must be vaccinated against the COVID-19 virus or be approved for either a medical or religious exemption by August 13, 2021. The employer advised employees of its COVID-19 vaccination policy by e-mail in July of 2021.

6. The purpose of the policy by the Defendant Boston College was to protect the university's employees, students, faculty and public at large from the spread of the COVID-19 virus.

7. The plaintiff AVENIR AGAJ became aware of the COVID-19 vaccination policy when he received the e-mail the Defendant Boston College sent to all employees in July 2021.

8. The Defendant at Boston College does not require any other vaccinations as a condition of employment or continued employment for staff.

9. The Defendant Boston College had an expectation that employees will be fully vaccinated, or have an approved exemption, by August 13, 2021.

10. The Defendant Boston College communicated its expectations to employees via the e-mail sent in July of 2021.

11. In July of 2021, the Plaintiff Avenir AGAJ spoke to the manager of facilities Ms Christine Laflame about the change in the vaccination policy from suggested to mandatory. The manager of facilities advised the claimant to submit a second exemption request to OID OFFICE Defendant Boston College.

12. On July 25, 2021, the Plaintiff Avenir AGAJ submitted a second request for exemption from the COVID-19 vaccination policy to OID OFFICE Defendant Boston College

13. The Plaintiff Avenir AGAJ did not receive a response or decision to his second exemption request.

14. On August 5, 2021, the Plaintiff Avenir AGAJ received an e-mail from Defendant Boston College, the vice president of HR Mr David TRAINOR which stated, in pertinent

part, "... Being fully vaccinated by August 13th is a condition of employment and required in order to return to campus this fall. Any employee who is not fully vaccinated will not be permitted to enter the campus after 5:00pm on Friday, August 13th. Human Resources will follow up with individuals who are not in compliance the week of August 16th."

15. On August 6, 2021, the plaintiff Avenir Agaj received an e-mail from the Defendant Boston College ,vice president of HR Mr David TRAINOR which stated, in pertinent part, "As you are aware, the University permitted employees to request exemption from the vaccination requirement for bona fide religious and medical reasons. The University reviewed all requests for exemption. Denials of exemption were based on a number of factors, including inadequate information or explanation of the basis for the request, and the undue hardship that would follow from permitting unvaccinated faculty and staff on campus, with potentially serious health consequences for all members of the [employer] community. As you know from previous communications, [the employer] denied your request for an exemption from the vaccination requirement. We urge you to join the many thousands of your colleagues at [the employer] who have chosen to be vaccinated."

The Plaintiff Avenir Agaj explained that by submitting the second request for an exemption within the permitted time frame he was complying with the employer's expectation. Since the employer's e-mail of August 6, 2021, does not indicate which exemption request was denied

16. On August 13, 2021, Plaintiff Avenir Agaj received an e-mail from the vice president of HR which stated, in pertinent part, "As of close of business today (August 13, 2021), you have failed to upload proof of a vaccine. As such, effective August 14, 2021, you are NOT authorized to access [the employer's] campus or your workspace. Your respective vice president or dean has been informed that you have failed to comply with the University's requirement as of this time. Human Resources will be in contact with you directly during the week of August 16, 2021, to determine the next steps. In the meantime, you are not coming to campus. If you have any questions or believe this email was sent to you in error, please email [HR department]."

17. On August 16, 2021, the Plaintiff Avenir AGAJ called the HR employment director mr John Bogdan to inquire about his employment status, and the director told the claimant he had been terminated on August 13, 2021 for failing to comply with the employer's COVID-19 vaccine requirements.

## COVID-19 Prevention Measures

In 2021, BC had in excess of 15,000 students and 3,500 faculty and staff. Id. 4 18. BC established a limited process through which employees could seek exemptions for medical or religious reasons. Id. {J 20-22.

1)  The plaintiff Avenir Agaj was not informed that BC established a limited process through which employees could seek exemptions for medical or religious reasons.


On April 23, 2021, BC first announced its mandatory vaccination policy, stating that, to "promote the health and safety of our campus community and surrounding neighborhood .. . the University will require all students, faculty, and staff to be fully vaccinated (with FDA approved vaccines) against COVID-19 before participating in any on campus activity related to

2)  Not true fact the vaccine mandate was issued by Defendant Boston College before the FDA approval for emergency use. the 2021-

BC achieved an ~99.3% vaccination rate among students, faculty, and staff. The high vaccination rate at BC lessened the spread of infections among those on campus, and likely lessened hospitalizations and serious illness among those who became infected.

3)  On the other hand, left unvaccinated contractors, vendors, suppliers to roam free and work around the campus, not to mention over 100 exemptions that Boston College granted faculty, students an staff people with a higher social status and connections, which Boston College does not mention anywhere.

## Exemption Process

Patricia Lowe, the Associate Vice President for Title IX and ADA Coordinator, and Edilma-Hosein Reyes, the Assistant Director of the OID at the time, Employees seeking a religious exemption were required to submit information supporting their request, including an explanation of the basis for their sincerely held religious belief and supporting documentation, such as a letter from the applicant's pastor, spiritual advisor, or other faith leaders. Id. §] 24. Fr. Anthony Penna, who was the Associate Vice President and Director of Campus Ministry, reviewed the requests when and if completed. Penna Aff. § 7. Applicants for medical exemptions were required to submit a letter from their physician, stating that vaccination was contraindicated by the applicant's medical condition.

**4) NOT FAIR OR TRANSPARENT. I THINK SO.....**

**PROCEDURAL HISTORY**

- **Plaintiff: Avenir Agaj, a former landscaper for the school.**
- **Defendant: Boston College.**
- **Filing Date: April 5, 2024, in the U.S. District Court for the District of Massachusetts (Docket No. 1:24-cv-10884).**
- **Core Issue: Agaj alleged that his termination in 2021 for refusing the COVID-19 vaccine on religious grounds violated his First Amendment rights and Title VII employment-discrimination statutes.**
- **The mandate: Agaj was fired in 2021 after refusing to receive the covid 19 vaccine due to his personal health risks and spiritual tenets.**
- **Boston College allowed unvaccinated contractors, vendors, suppliers to enter end work in campus freely including landscaper contractors while mandating a covid 19 vaccine which was authorized only for emergency use (EUA) by the, FDA and without even an agreement from the union breaching the contract and making it a condition of employment for Boston College employees.**

- **Religious Grounds: He identified as an adherent of the 10-th century BOGOMIL faith and a folk medicine practitioner (ETHNOBOTANY) stating that the vaccine conflicted with his religious duty to avoid risks to his spiritual and physical well-being.**

## Procedural Status

- **Court Decision: A federal judge allowed Agaj's lawsuit to move forward past initial motions, ruling that his claims regarding religious discrimination and wrongful termination could proceed in court.**
- **Legal status:Agaj alleged that the termination violated his First Amendment religious rights and Title VII civil right act 1964 MGL 151B employment protections.**

  **The court permitted the lawsuit to advance past the motion stages.**

## ARGUMENT

### Addressing Religious Discrimination and Accommodation in Today's Workplace

Pursuant, Title VII of the Civil Rights Act of 1964 is a federal law that stops workplace discrimination based on race, color, religion, sex, and national origin. In Massachusetts, workers get extra protection from Massachusetts General Laws Chapter 151B, which covers smaller businesses and adds more protected groups like gender identity, sexual orientation, and age.

### Key Issues in Religious Accommodation: Questioning Sincerity of Belief

Groff v. DeJoy has reduced the viability of "undue hardship" claims, and rightly so. The focus appears to be shifting to employer attacks on sincerity of belief, especially in the COVID context.

### I. What Inquiry is an Employer Permitted to Make with Respect to Sincerity of Belief?

In E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 135 S. Ct. 2028, 192 L. Ed.2d  35 (2015), the Supreme Court clarified Title VII does not contain a notice of requirement.

Instead, the employer's duty to accommodate is triggered when it understands an employee needs accommodation. In that case, the retailer refused to hire an otherwise qualified applicant because she wore a head scarf, believing she wore it as a Muslim woman. During her interview, she had never been asked about her head scarf, nor did she inform the employer she was Muslim.

Decades earlier, the Ninth Circuit came to essentially the same conclusion, that it was sufficient for an employee to simply explain the need for an accommodation due to religion, without having to explain one's religion:

A sensible approach would require only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.

See Redmond, 574 F.2d at 902 (informing employer that "I [am] not able to work on Saturday because of my religious obligation" is sufficient); Chrysler Corp. v.Mann, 561 F.2d 1282, 1286 (8th Cir.1977) (employee must, at least, "inform[ ]his employer of his religious needs"), cert. denied, 434 U.S. 1039, 98 S.Ct. 778, 54

L.Ed.2d 788 (1978). Under such a standard, Heller's notice to EBB was satisfactory. Young and Bowman knew that Heller was Jewish. Young knew that Heller's wife was studying for conversion. And, when Heller requested the time

off, he informed Young why he needed to miss work. Any greater notice requirement would permit an employer to delve into the religious practices of an employee in order to determine whether religion mandates the employee's adherence. If courts may not make such an inquiry, see Fowler, 345 U.S. at 70, 73 S.Ct. at 527; Redmond, 574 F.2d at 900, then neither should employers. Heller v. EBB Auto Co., 8 F.3d 1433 (9th Cir. 1993)

Moreover, it is settled by law not just with respect to Title VII, but M.G.L 151B, as well. MASS courts follow Heller and also place a minimal "information" burden on the employee in M.G.L 151B cases. In California Fair Emp. & Hous. Com. v. Gemini Aluminum Corp., 122 Cal. App. 4th 1004, 1015 (2004), an appellate court, citing Heller, rejected the employer's claim that the employee had to explain his beliefs more completely in order to be eligible for an accommodation:

Gemini also contends that it was not required to accommodate Young's request until he explained his religious beliefs to his employer and provided enough information about his religious needs for Gemini to understand the significance of the convention and how his attendance was tied to his religious beliefs. We disagree. Notice to the employer does not require a complex explanation. (See Heller v. EBB Auto Co., supra, 8 F.3d at p. 1439.) The employee needs only to cite a religious connection. (See Redmond v. GAF Corp. (7th Cir.1978) 574 F.2d 897, 899–902, hereafter Redmond.) Gemini, supra at 913. Employees are not required to give a "complex explanation," but only need to "cite a religious connection" between their religious belief and their objection to the vaccine. See also Rolovich v. Wash. State Univ., No. 22-CV- 0319, 2023 WL 3733894, slip op. at *3 (E.D. Wash. May 30, 2023) (The plaintiff did not need to explain in detail how the vaccine conflicted with his Catholic faith.); Kather v. Asante Health System (D. Or., July 28, 2023, No. 1:22-CV-01842-MC) 2023 WL 4865533, at *5 (Despite not articulating her religious conflict with great clarity and precision, plaintiff pled enough facts that, favorably construed, allege a conflict with receiving a COVID-19 vaccine motivated by her bona fide religious beliefs); Caspersen v. Western Union, LLC, No. 23-CV-00923-NYW-SBP, 2023 3 WL 6602123, at *9 (D. Colo. Oct. 10, 2023) (holding that while his religious objection was not scrupulously detailed, the Court concludes that these statements, taken together, are sufficient at the pleading stage to survive a motion to dismiss); Collins v. Tyson Foods, Inc., No. 22-CV-00076, 2023 WL 2731047, at *7 (W.D. Ky. Mar. 30, 2023) (ruling that a plaintiff established a prima facie case by simply identifying as a Christian who opposed the COVID-19 vaccine due to the use of fetal cell tissue).

It is not an employer's job or prerogative to police the consistency of employees' religious beliefs. All Heller and Gemini required a plaintiff to do was to inform an employer they had a sincere religious belief in conflict with a vaccine requirement. Employees are not required to prove or justify their beliefs, as shown above.

Employers may also not use consistency of practice or rationality of beliefs as tests. As the Ninth Circuit held in a COVID-19 vaccine objector case:

Beyond the district court's factual error, its decision reflects a misunderstanding of Title VII law. A religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted. Thomas v. Review Bd., 450 U.S. 707, 714 (1981) ("[T]he resolution of [whether a belief is religious] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."); Doe v. San Diego Unified Sch. Dist., 19 F.4th 1173, 1176 n.3 (9th Cir. 2021) ("We may not . . . question the legitimacy of [Appellants'] religious beliefs regarding COVID-19 vaccinations." (citing Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n, 138 S.Ct. 1719, 1731 (2018))), recons. en banc denied, 22 F.4th 1099 (9th Cir. 2022); EEOC Guidance, § 12-I(A)(2) ("[T]he sincerity of an employee's stated religious belief is usually not in dispute and is generally presumed or easily established." (cleaned up)). Keene v. City of San Francisco, 22-16567 (9th Cir. May 15, 2023)Employers are required to "presume" when its employees certified they have a sincere religious belief in conflict with the vaccine, that it is so, in the absence of an "objective" basis to doubt. EEOC Guidance, § 12–I(A)(2)2.

## II. When Employers ask Intrusive Questions, they Violate Employees' Rights under the M.G.L 151B.

In the absence of objective evidence that employees lack a sincere religious belief in conflict with a vaccine mandate, employers violate employees' rights to informational and medical privacy by asking intrusive questions. M.G.L 151 B makes it unlawful for an employer to make any medical inquiry of an employee unless job-related and consistent with business necessity. MA GOVT § 12940(f) Follow up questions about medical history are often overbroad; for instance, when asking whether an applicant had ever used medications or taken vaccines, or questions about whether someone had knowingly used products developed with fetal tissues. Improper questions are those which are not based on objective doubts, but are merely fishing efforts to find something. The MASS Constitution vigorously protects employee interests in informational privacy. See, Hill v. Nat'l Collegiate Athletic Assn., 7 Cal. 4th 1, 35, 865 P.2d 633 (1994) ("Informational privacy is the core value furthered by the Privacy Initiative. (White v. Davis, supra, 13 Cal.3d at p. 774.)")III. "Sincerity of Belief" Questions Should Survive Both 12(b)6 and MS motions – At most, these questions may be a credibility issue for the jury. Moreover, the Ninth Circuit has been consistently reversing district courts which dismiss COVID-19 claims on 12(b)6

motions. See, Beuca v. Washington State University, 2024 WL 3450989 (C.A.9 (Wash.), 2024); Health Freedom Defense Fund, Inc. v. Carvalho, 104 F.4th 715, 722 (C.A.9 (Cal.), 2024); Bacon v. Woodward, 104 F.4th 744 (C.A.9 (Wash.), 2024). Other circuits have done so as well. See, Bazinet v. Beth Israel Lahey Health, Inc., 2024 WL 3770708 (1st Cir. 2024); Lucky v. Landmark Medical of Michigan, P.C., 103 F.4th 1241 (6th Cir. 2024); Passarella v. Aspirus, Inc., 108 F.4th 1005 (7th Cir., 2024); Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894 (8th Cir. 2024); Davis v. Orange Cnty., 2024 WL 3507722 (11th Cir. 2024).

*Ruggiero v. Mount Nittany Medical Center* is a 2018 federal appeals court case where the 3rd U.S. Circuit Court of Appeals ruled that a nurse fired for refusing a mandatory workplace vaccine could proceed with her Americans with Disabilities Act (ADA) lawsuitThe Circuit Courts are clear; a light touch is required when analyzing sincerely held religious beliefs, and "it is generally presumed or easily established." Keene v. City & Cnty. of San Francisco, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023).(*Lisa Domski v. Blue Cross Blue Shield Michigan*).

She argued that taking the vaccine would "harm her relationship with God" and violate her faith.

Plaintiff Avenir Agaj requests the court to DENY the defendant's Boston College motion for Summary Judgment in WHOLE.

Respectfully submitted

CERTIFICATE OF SERVICE

I hereby certify that a copy of this document has been sent via e-mail to Mr. ALAN D. ROSE,Ms Meredith Doty Counsel for Defendant BOSTON COLLEGE.

And A Copy was filed on the UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF MASSACHUSETTS Clerks office.

PRO SE. AVENIR AGAJ on behalf of itself Plaintiff

14 PAUL STREET                              Avenir Agaj Signed: AVENIR AGAJ

BURLINGT0N                                  Date: AUGUST 11,2O26

MA,01803

CELL:  857-544-0780                          Aviaga10@hotmail.com