**UNITED STATES DISTRICT COURT**

**FOR THE**

**DISTRICT COURT OF MASSACHUSETTS**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **AVENIR AGAJ** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **V.** | ) | **Civil ACTION No. 1:24 –CV-10884-JEK** |
| | ) | |
| **BOSTON COLLEGE** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| _____) | |

**PLAINTIFFS OPPOSITION TO DEFENDANTS' TRUSTEES OF BOSTON COLLEGE**

**CONCISE STATEMENT OF MATERIAL FACTS**

_____

**PRO SE.**

**Plaintiff AVENIR AGAJ respectfully submits this Opposition to the Defendant Trustees of Boston College Concise Statement of Material Facts in support of its Motion for Summary Judgment.**

**Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1,**

**1. Prior to his employment at Boston College, Mr. Agaj worked at Pine Manor College. After Boston College purchased Pine Manor College, BC interviewed Mr. Agaj and**

subsequently offered him employment as a landscaper. Affidavit of David Trainor ("Trainor Aff.") /11.

Response:

Plaintiff admit this statement.

2. On or about October 19, 2020, Mr. Agaj was hired by Boston College as a

landscaper in the Facilities Management department. Affidavit of Charles Baldwin ("Baldwin Aff.") § 2; ECF 1, § 1; ECF 41 4 1.

Response:

Plaintiff deny this statement. "Baldwin Aff.") § 2 Is incorrect i was not hired as Landscaper II ,I was hired as Landscaper III, there is a difference in pay which i came to know after i discovered that the Defendant Boston College stole my wages from day 1.

I was hired on 10/19/2020 and not October 22 ,2020 "Baldwin Aff.") § 2

See id my position statement ECF 149,EXB 1

3. Landscapers were deemed essential employees during the pandemic; they remained at work on the Boston College campus, throughout the pandemic, with the exception of a brief period at the beginning of the pandemic when Boston College was locked down. Baldwin Aff. 7 5. Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 2 of 16

Response:

Plaintiff admit this statement.

4. Mr. Agaj's job responsibilities were varied. They included general landscape work, cutting grass, hedging, weeding, and snow removal, as well as other tasks which required him to work indoors. One aspect of landscape workers' duties included moving and disposing of furniture, desks, chairs, sofas, and other items, from indoor locations including classrooms. The Facilities Department sends at least two people to the sites for removal and disposal purposes. Baldwin Aff. 4, 10.

Response:

Plaintiff deny in part this statement. Because the defendant does not disclose all my job functions, like assisting and loading different landscaper contractors, movers loading unloading sand ,s now removal, sodding ,backfilling ,planting ,watering, mulch ,prune ,rental tents or changing the floors on the sport arena.

5. A significant part of the duties of landscape workers was event management for meetings, conferences, club gatherings, barbeques, and other activities. Mr. Agaj was a split week worker: he worked on weekends, when there were frequently events that the landscapers worked on. Landscape workers, including Mr. Agaj, were responsible for setting up indoor and outdoor venues for various events held across campus throughout the year. When performing these tasks, Mr. Agaj, and any other landscape workers assigned, would inevitably come in contact with other Boston College staff, students, and/or visitors. For these purposes, landscape workers worked in teams of two people, sometimes four, carrying, placing, and removing tables, chairs, and other equipment for events, and breaking down the equipment post event, picking up trash bags, and traveling together. Baldwin Aff. 4 12.

Response:

Plaintiff deny in part this statement i never was assigned or participated in event management for meetings, conferences, club gatherings, or barbeques.

6. On a daily basis, as part of his responsibilities, Mr. Agaj came into contact with

numerous landscape workers indoors and inside his work truck, and with numerous members of the Boston College community. Baldwin Aff. § 6.

Response:

Plaintiffs deny in part this statement i don't get to choose where to go or what to do. Mostly, we were contacted by phone or email.

7. Each morning, all union employees were required to "swipe in" and receive daily work assignments from an operations supervisor. The Landscape Services staff comprised approximately twenty-eight people, at least half of whom, including Mr. Agaj, swiped in at 300 Hammond Pond Parkway. In addition, approximately 90 employees from Custodial Services Case 1:24-cv-10884-JEK Document157_ Filed

07/21/26 Page 3of16 reported to, and departed from the same location, and their supervisors as well as management staff shared that building. Baldwin Aff. § 7.

Response:

Plaintiff admit this statement.

8. Landscape operations supervisors conducted team meetings, when necessary, with all of the landscape services staff; these meetings were typically held indoors. Baldwin Aff. 8.

Response:

Plaintiff admit this statement.

9. Throughout he day, the landscape workers, including Mr. Agaj, typically took

coffee and lunch breaks at various indoor break rooms across campus. During such breaks, given that people were eating and/or drinking, people were typically unmasked. Baldwin Aff. J 11.

Response:

Plaintiff admit this statement.

10. At times during the day, Mr. Agaj travelled by truck between work sites across

the campus; as he travelled, Mr. Agaj was often in the truck with one or two other landscape workers. While additional trucks were rented during the pandemic, it was not possible for each landscaper to drive separately for each task. Baldwin Aff. 4 9.

11. The majority of work performed by Mr. Agaj was performed with a partner, in

part for safety reasons, or with a group due to the number of people necessary to complete a task. Baldwin Aff. ¥ 15.

Response:

Plaintiff admit this statement. Mr Juan Angel or Angelo Carini.

12. During the colder months when temperatures were low, landscape workers,

including Mr. Agaj, often worked indoors for "shop" cleanup, which involved reviewing inventory and equipment and organizing supplies. This work was also done in groups. Baldwin Aff. ¥ 13.

Response:

Plaintiff admit this statement.

13. Mr. Agaj was required to wear a mask while at work, to engage in social

distancing, and was subject to Boston College's COVID-19 testing policies. Facilities of employees were requested to follow specific procedures to minimize the spread of COVID. Despite these precautions, employees in Facilities Management were consistently testing positive for COVID Case 1:24-cv-10884-JEK Document157 Filed 07/21/26 Page 4 of 16 prior to the vaccination mandate. One positive test result would generally snowball, leading to one to four landscapers out of work for days. Positive COVID tests were constantly ongoing at this time. Baldwin Aff. § 14.

Response:

Plaintiff admit this statement.

14. Once vaccinations became available and Boston College imposed its vaccination requirement, the positive test results dramatically declined by the end of August 2021.

Attendance in Facilities Management improved dramatically. Baldwin Aff. 7 16.

Response:

Plaintiff deny this statement.

Not according to the chart.

15. Boston College committed to providing an in-person education in the midst of the

pandemic, representing to its students and their parents that it would follow strict protocols and procedures to maintain a safe environment to do so. See Trainor Aff. § 8 & Exs. 6, 7. Boston College determined that the benefits of in-person education during the pandemic, including the mental health benefits to students, demanded that BC take significant efforts to provide in-person learning. Trainor Aff. J 8.

Response:

Plaintiff deny this statement. No info was shared with me.

16. Prior to the availability of SARS-CoV-2 vaccines, universities, including Boston

College, had to implement a wide range of expensive and sometimes disruptive policies (e.g. remote learning, masking, social distancing, limited access to in-person services, testing, isolation and quarantine) in order to contain viral spread on University campuses. Prior to widespread availability of COVID vaccines,

mathematical models predicted that high levels of vaccination would be required to contain spread of SARS-CoV-2 and to prevent disease and death on university campuses. Affidavit of Welkin Johnson, Ph.D. ("Johnson Aff.") § 7.

Response:

Plaintiff deny this statement. No info on the matter,

17. Boston College determined that mandating vaccination for all students, faculty,

and staff was the best way to protect against severe illness, hospitalization, and death, and reduce the transmission of COVID-19. Boston College's decision to require students, faculty and staff to be vaccinated against COVID-19 was based on scientific studies, opinions and analysis, as well Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 5of16 as the recommendation of the federal Centers for Disease Control and Prevention ("CDC"), the United States Department of Health and Human Services, and the Massachusetts Department of Public Health that vaccination was the best way to protect against severe illness, hospitalization, and death, and reduce the transmission of COVID-19. Johnson Aff. ¥ 6.

Response:

Plaintiff  deny this statement. Not true fact. Contractors, vendors ,suppliers and about 100 staff were exempt. Ex file 1 AGAJ.

18. Vaccination was particularly important on college campuses like Boston College,

given the close proximity in which students, faculty and staff interact on a daily basis and the sheer number of individuals in its community. In 2021, Boston College had in excess of 15,000 students and 3,500 faculty and staff. Johnson Aff. § 8.

Response:

Plaintiff  deny this statement. Why did the university allowed unvaccinated contractor a vendors ,Ex file1 AGAJ

19. In April 2021, the Delta variant rapidly caused a new wave of COVID-19

infections, with cases rising sharply from April/May 2021 and displacing the previous Alpha variant to become the primary strain by July 2021. The Delta variant was designated as a Variant of Concern (VOC) by the Centers for Disease Control and the World Health Organization in May 2021. The Delta variant was roughly 60% more transmissible than the Alpha variant and twice as likely to cause hospitalization,

especially in unvaccinated individuals. It spread faster, caused severe disease more quickly, and carried mutations that partially evaded immunity, resulting in higher breakthrough infections. A Delta variant breakthrough infection occurred when a fully vaccinated person (>14 days post-vaccination) tests positive for SARS-CoV-2. While Delta's high viral load made these infections more common, vaccines remained highly effective at preventing severe illness, hospitalization, and death. Johnson Aff. § 9.

**Response:**

Plaintiff deny this statement. The university put profit before people EX .file1 AGAJ defendant Boston College construction work with unvaccinated contractors.

20. In reliance on scientific studies and guidance from public health authorities,

Boston College imposed a mandatory vaccination policy on April 23, 2021. Affidavit of Patricia Lowe ("Lowe Aff.) § 4; Johnson Aff. 7 6. On April 23, 2021, Boston College first announced that, in order to "promot[e] the health and safety of our campus community and surrounding Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 6 of 16 neighborhood . . . the University will require all students, faculty, and staff to be fully vaccinated (with FDA-approved vaccines) against COVID-19 before participating in any on campus activity related to the 2021-2022 academic year." Lowe Aff., 9 4 & Ex. 1. That announcement further stated that exceptions would be granted for legitimate religious and medical reasons. Lowe Aff., Ex. 1.

**Response:**

Plaintiff deny this statement. No writen statement will be mandatory or a condition of employment.

21. On May 10, 2021, Vice President of Human Resources, David Trainor, sent an

email to the BC community, which reiterated BC's vaccine mandate for the 2021-2022 academic year. It explained that, "The University will consider medical or religious exemptions from the mandatory vaccination requirement, and guidelines and procedures for such requests will be communicated in the coming days." See Trainor Aff., Ex. 1.

**Response:**

Plaintiff  deny this statement. Not approved by the FDA until august 23 ,2021 Ex file3 Agaj

22. On May 13, 2021, Mr. Trainor sent another email to the BC Community,

describing the steps to provide proof of vaccination. It explained, "Exemptions will be granted for legitimate religious and medical reasons. To request an exemption, please fill out the COVID-19 Vaccination Exemption Request Form which can be found on the Office for Institutional Diversity website." See id., Ex. 2.

Response:

Plaintiff deny this statement. He did not disclose that to grant an exemption for vaccine you need extra documents also did not say if it will be a condition of employment or that accommodations would pose an undue hardship on the employer.It only states to fil out the form o additional documents required.

23. The form to request an exemption from the University's vaccine mandate was placed on the OVPHR website, which was then called the Office for Institutional Diversity and later merged with OVPHR. Patricia Lowe, the Associate Vice President of the OVPHR and the University Title IX and ADA Coordinator, and Edilma-Hosein Reyes, the Assistant Director of the OID at the time, were tasked with administering the process of reviewing and making decisions on exemption requests. Lowe Aff. ¥ 6.

Response:

Plaintiff deny this statement. They were not the only ones involved facilities manager MS Christine LaFlamme was involved.EX FILE 5.

24. Employees seeking a religious exemption were required to submit information

supporting their request, including an explanation of the basis for their sincerely held religious Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 7 of 16 belief and supporting documentation, such as a letter from the applicant's pastor, spiritual advisor, or other faith leader. Lowe Aff. § 7. Employees seeking a medical exemption were required to submit a letter from the applicant's treating physician, stating that vaccination was contraindicated by the applicant's medical condition. BC denied requests for exemption by applicants who declined to provide documentation. Id.

Response:

Plaintiff deny this statement. Explanation or documentation, not just documentation

Ex.

25. On May 28, 2021, Mr. Trainor sent an email to the BC Community, informing everyone of two deadlines: August 13, 2021, to be fully vaccinated if returning to campus before classes resumed, and August 1, 2021, to submit a request to the Office of Institutional Diversity for a COVID-19 vaccination exemption. Trainor Aff. § 4 & Ex. 3.

Response:

Plaintiff deny this statement. NO condition of employment was told it would after my first request.

26. On June 23, 2021, Mr. Agaj filled out and emailed to Boston College's Office for Institutional Diversity his exemption request. Lowe Aff. 4 8. The request form gave employees the ability to choose whether an exemption was for "Medical," "Religious," or "Other special circumstance." Mr. Agaj selected all three. Id. § 9. In the box for describing special circumstances, Mr. Agaj wrote, "l) It would have an adverse effect on my immune system on medium and long term not to mention immediate side effects 2) It goes against my religious belives faith healing 3) As long as indemnity for vaccines is in place i don't feel safe having one [sic]"In the box which requested medical or religious documentation and any additional information, Mr. Agaj wrote, "Please grant me exemption for the reasons stated above[.]" Lowe Aff. Ex. 2. Agaj's exemption request did not identify his religion. Id. Response:

Plaintiff admit this statement.

27. On June 23, 2021, upon receipt of Mr. Agaj's request form, Ms. Reyes emailed

Mr. Agaj at 10:24 AM: Thank you for your email and request form. For medical exemptions, please provide, at minimum, a letter from your healthcare provider that clearly states the contraindication to vaccination. For religious documentation, please provide Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 8 of 16 a letter from your spiritual leader or advisor that clearly states the religious reasoning for exemption.

Lowe Aff. § 11 & Ex. 3.

Response:

Plaintiff deny this statement. That is not all what was Written.

28. At 10:28 AM on June 23, Mr. Agaj responded to Ms. Reyes' email, stating, "Your

request is in clear violation of my rights 1 dont have to provide you further info on my health records disability act religius belives nor anything else for that matter have a nice day [sic]."Lowe Aff. § 12 & Ex. 3. 29. At 11:01 AM on June 23, Mr. Agaj sent Ms. Reyes a second email that day, stating: Hi Your request to provide documents about my medical record or religious belives violates my rights under disability act 151B religius freedoms ACLU and privacy laws 1B chapter 214 Title 1 Part 3. Frankly you should not demand that 1 provide proof. Please respect my rights! Have a nice day Avenir Agaj [sic]. Lowe Aff. § 13 & Ex. 4.

**Response:**

**Plaintiff admit this statement.**

30. At11:12 AM on June 23, Mr. Agaj sent Ms. Reyes a third email that day, stating:

"HI Your request to ask me to provide physical proof of vaccination Is In clear violation of the disability act 151 B, Religlus fredom act RFRA Privacy law 1B chapter 214 title 1 Part 3. Please respect my rights. Have a nice day Avenir Agaj [sic]."" Lowe Aff. 9 14 & Ex. 5.

**Response:**

**Plaintiff deny this statement.Not full statemment .**

31. When Ms. Lowe reviewed Mr. Agaj's request for exemption, on June 24, 2021, and saw that he had been asked to provide documentation but had declined to provide it, she emailed Mr. Agaj that BC did not have sufficient information to make a decision. Lowe Aff. § 15 & Ex. 5. She advised him that Title VII permitted BC to request supporting documentation and requested that he provide documentation because BC could not, "effectively evaluate [his |Case 1:24-cv-10884-JEK Document157 Filed 07/21/26 Page 9 of 16 exemption request without some explanation or documentation of the nature of [his] medical or religious belief and how it applies to the vaccine requirements." Lowe Aff. § 15 & Ex. 5.

**Response:**

**Plaintiff deny this statement. No paper no religion is that the law??**

32. On June 30, 2021, Ms. Reyes sent a "gentle reminder"to Mr. Agaj that he had not submitted supporting documentation, and that if documentation were not received in five days, BC would deny his request. Lowe Aff., 9 16 & Ex. 6.

Response:

Plaintiff deny this statement. Not full text, no problem here Follows our process. Email response David Trainor. Ex file 5 AGAJ

33. Mr. Agaj replied to this request for supporting documentation by stating that Ms. Reyes' email was not a gentle reminder, but an "ULTIMATUM [sic]. Rest assure I will take action ageist any retaliation and denial of my request for vaccination exemption [sic]." Lowe Aff. 9 17 & Ex. 6.

Response:

Plaintiff deny this statement. Not full text and is taken on the context.

34. On July 8, 2021, the Office for Institutional Diversity emailed Mr. Agaj telling him that his request for an exemption to the University's vaccination requirements has been denied, as "the Information [he] provided does not adequately support a religious exemption". Lowe Aff., 9 19 & Ex. 7.

Response:

Plaintiff deny this statement. I was lied too.

In consultation with the campus ministry, it has been concluded that the information you have provided does not adequately support a religious exemption. Your request for an exemption to the university vaccination requirement has been denied.

How about my medical reasons and other reasons? it was not forwarded to Fr. Penna, who was tasked with reviewing religious Exemption requests. Lowe Aff. 4 20; Affidavit of Fr. Anthony Penna ("Penna Aff.'"') § 8

Not true you have not consulted any one.

35. Two weeks later, on July 26, 2021, Mr. Agaj submitted a new request for exemption. Lowe Aff., § 20. In the section of the form which asked applicants to describe their special circumstance for requesting an exemption, Mr. Agaj wrote:

Please grant me an exemption because 1 rely only on Folk Medicine of Ethnobotany and Religious Prayer for my medical care. I Do Declare that my sincere relgious held beliefs as practicant ,believer and descendant of the faith of BOGOMILS, which forbids me to have a covid-19 Vaccine. The way the covid -19 vaccine is made and distributed goes against my Faith and Morals. Lowe Aff., Ex. 8. In the section of the form which requested supporting medical or religious documentation and any additional information, Mr. Agaj wrote: The Covid -19 vaccine is a Health Risk for healthy people. My religious belives as BOGOMIL forbits me to take any thing that risks my health and spiritual wellbeing. My body is my Temple it is my duty an obligation to keep it pure, 9 Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 10 of 16 free from filth. May i also remind you again of my rights under the 1St Amendment also of Aticle 9 of The Human Rights act 1998 and the bill of rights. Please Grant Me The Covid -19 Vaccine Exemption.

Response:

Plaintiff  deny this statement. The defendant is saying half truths that is not my whole request;

My exemption form request state the following:

1) Please grant me an exemption because i rely only on Folk Medicine of Ethnobotany and Religious Prayer for my medical care.

2) I D o Declare that my sincere religious held  beliefs as practicant, believer and descendant of the faith of BOGOMILS, which  forbids me to have a covid –19 vaccine.

3)The way the covid –19 vaccine is made and distributed goes against my Faith and Morals.

4)The Covid–19 is a Health Risk for healthy people.

5)My religious beliefs as BOGOMIL forbids me to take anything that risks my health and spiritual wellbeing.

6)My body is my Temple it is my duty an obligation to keep it pure, free from filth.

7)May i also remind you again of my rights under the first Amendments.

8)Article 9 The Human Rights act 1998 the bill of rights.

9)Please Grant Me The Covid –19 Vaccine Exemption.

10)Dated 07/25/2021

36. Mr. Agaj did not include any supporting documents with his new request. BC had previously informed him of the documentation requirement and declined his request because he had refused to produce supporting documentation. Lowe Aff. § 20. Because Mr. Agaj's request was not complete, it was not forwarded to Fr. Penna, who was tasked with reviewing religious Exemption requests. Lowe Aff. 4 20; Affidavit of Fr. Anthony Penna ("Penna Aff.'"") § 8. Mr. Agaj's July 26 exemption form was the first time he referred to ethnobotany or his Bogomils Religion. Lowe Aff. § 20.

Response:

Plaintiffs deny this statement. In  my denial it was stated that my exemption request was forwarded to the campus ministry. Lowe Aff., 9 19 & Ex. 7.How come that when i dont declare my religion you send the request to the ministry  and when i state  my religion  it does not get sent to the ministry for evaluation. I Have uploaded my request for vaccine exemption but so far it has not been approved i again will ask for one. I ask to whoever is in charge to grant me one. I have my reasons not to have one and that should be the end of the matter. HI Avenir,please resend your exemption request to accommodation@bc.edu

.Here is the copy of the form please respect my rights.Best Regards Avenir Agaj Hi Avenir, thank you for sending this. Please let me know if you hear anything in the next day or two. If not, I will reach out to find someone to contact you. Thanks.

## Hi Patricia,

Just wanted to check in on Avenir's exemption (cc'd on this email). He said that he had resubmitted the form but hadn't heard anything. If you need a copy of the form or anything additional, please let him know. Thanks.

37. On August 6, 2021, Mr. Trainor emailed Mr. Agaj informing him that his

vaccination exemption request was denied. Trainor Aff., Ex. 4. Trainor stated that "{denials of exemption were based on a number of factors, including inadequate information or explanation of the basis for the request, and the undue hardship that would follow from permitting unvaccinated faculty and staff on campus, with potentially serious health consequences for all members of the Boston College community." Id. Trainor's message also informed Mr. Agaj that if he chose to be vaccinated, Mr. Agaj needed to submit proof of vaccination by August 13, 2021; if Mr. Agaj failed to provide proof of vaccination, he would no longer be permitted on campus. Trainor Aff. 9 5. Mr. Agaj did not get vaccinated. Trainor Aff. J 6.

Response:

Plaintiffs deny this statement.No evidence of hardship was presented to me  during my employment at Boston College.

38. On August 13, 2021, BC's deadline by which all students, faculty, and staff were required to upload proof of vaccination, Mr. Agaj's vaccination status was still outstanding, and 10 Case 1:24-cv-10884-JEK Document157 _ Filed 07/21/26 Page 11 of 16 BC had not received any supporting documentation for his exemption request. Trainor Aff. 4 6; Lowe Aff. § 22. 39. Mr. Agaj was subsequently terminated on August 19, 2021. Trainor Aff. § 6; Lowe Aff. Ex. 9. 40. According to his Interrogatory Response, Mr. Agaj's personal belief is that COVID-19 vaccine is ineffective and harmful because it "does not protect humans from getting COVID-19", does not prevent the spread of COVID-19, "[h]as adverse side effects as vaccine; "To healthy individuals is an unnecessary health risk; he "believe[s] it is no longer in recommended for use or authorized in the USA; [d] uring [his] employment at Boston College I believe it was not fully approved only authorized by FDA, CDS for emergency use only (EUI)."Affidavit of Meredith Doty ("Doty Aff."), Ex. 1 (Int. Response), No. 4.

Response:

Plaintiffs deny this statement. My termination letter was given to me on the 08/19/2021 i was terminated on august 31 ,2021

41. As a result of Boston College's vaccination policy, Boston College achieved an

~99.3% vaccination rate among students, faculty, and staff. A fully vaccinated community was essential to Boston College's mission to continue to provide an in-person education to its students during the pandemic. Studies demonstrate that the closer to 100% vaccination rate a community achieves, the better the chances of eliminating spread of the COVID-19 virus. For example, if a community is 95% vaccinated, 1 out of every 20 individuals is potentially at risk of spreading COVID-19. In this situation, gatherings of 20-100 people will include on average 1-5 unvaccinated individuals. By comparison, if the same community reaches a 99% vaccination rate, on average only one person in a gathering of 100 people would be at risk of carrying and spreading the virus, and most smaller groups will have 0-1 individuals with the potential to carry and spread the virus. Groups of this size range (20-100 people) form regularly on university campuses, in spaces that include (but are not limited to) classrooms and lecture halls, 11 Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 12 of 16 laboratories, dormitories, cafeterias, libraries, waiting rooms, break rooms, workshops, recreational facilities, shuttle buses and bus stops, and administrative office suites. A campus community is also dynamic, with students, faculty and staff moving within and between spaces and assembling into new groups throughout the day. Under such circumstances, even a small increase in vaccination rates (from 95% to 99%) can translate into a significant reduction in the risk of infection and disease. The high vaccination rate at Boston College lessened the spread of infections among those on campus, and likely lessened hospitalizations and serious illness among those who became infected. Johnson Aff. J 10.

Response:

Plaintiffs deny this statement. COVID did not start on august 13 ,2021 not it ended.

Boston College MEDICAL CHART .EX AGAJ


42. As part of his responsibilities, Mr. Agaj came into contact, in enclosed spaces,

with numerous members of the Boston College community, including faculty, staff and students who worked in the Facilities department. He regularly performed tasks with other team members, the majority of which required physical activity. The performance of such physical activities increases the risk of potential transmission

due to increased breathing and sweating. Potential transmission also increases with other factors often associated with physical work, such as an inability to wash hands frequently due to working in a location removed from restrooms or faucets. As of 2021, there was also a concern about surface transmission or COVID-19; that is, the possibility that individuals could become infected by contacting the same commonly touched surface as infected individuals. Johnson Aff. § 12; Baldwin Aff. ¥ 6.

Response:

Plaintiffs deny this statement. Not true. I can prove i never got covid and i never gave covid have prejudice and discriminate against my faith of BOGOMILS and medical practice ethnobotany. Ex agaj

43. Due to the highly transmissible nature of COVID, Mr. Agaj, if he became infected, could have readily passed the virus on to other individuals in the Boston College community, who could have then infected others. Contact tracing, which is aimed at notifying individuals of potential exposure and preventing further transmission, has limited effectiveness and generally only prevents a fraction of onward transmissions from contacts. Because it only 12 Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 13 of 16 takes one person to set off a chain of transmission, the risk of having just one person who can transmit the virus poses a significant risk to other individuals. This was especially true given the breakthrough infections caused by the Delta variant. Johnson Aff. ¥ 13. Response:

Plaintiffs deny this statement.If ???? No ifs no buts i did not get sick period so you don't know are you GOD??? EX file 3 agaj

44. To accommodate Mr. Agaj's requesto work unvaccinated, Boston College would

necessarily have had to engage in alternative measures to ensure the safety of the Boston College community, though none of those measures would be likely as successful as vaccination. These measures would have created a substantial increased cost to Boston College, particularly considering the increased risk of COVID-19 infection at the time of Mr. Agaj's termination. For example, alternative measures such as repeated testing; monitoring Mr. Agaj's compliance with masking or social distancing; keeping Mr. Agaj fully separated from immunocompromised individuals; and strategically coordinating and/or limiting the number of individuals with whom Mr. Agaj worked would require Boston College to expend significant time and resources and disrupt the work of his department. Baldwin Aff. 7 17; Johnson Aff.

§ 13; Trainor Aff. J 8-9. 45. As the majority of Mr. Agaj's work required him to work with a partner for safety purposes, Boston College could not accommodate Mr. Agaj by allowing him to work on his own. Baldwin Aff. ¥ 17. Further, removing Mr. Agaj from group work would require other landscapers to assume many of his essential duties and increase the burden on them to complete assignments requiring physical labor. Id.

46. If Mr. Agaj were to remain on campus unvaccinated in the Fall of 2021, he would

have posed a safety and health risk to individuals with whom he worked directly at Boston College, to the other staff members with whom he worked, and to the greater Boston College community. Johnson Aff. ¥ 12. 13 Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 14 of 16

47. Allowing Mr. Agaj to work unvaccinated would have caused an undue hardship to Boston College because it would have increased the likelihood of COVID-19 infection among staff, faculty and students at Boston College. Johnson Aff. § 12; Lowe Aff. J 25; Baldwin Aff. § 18. Response:

Plaintiffs deny this statement.How do you know that Mr Johnson? You did not know who i was up to e few months a go.Have we ever meet?

Ms Lowe i think that me causing undue hardship  to Boston College i think is above your paid grade.

Charlie Charlie what happened to you what is the defendant promising a pay rase a promotion. You know you were not even supposed to know who is vaccinated and who is not, because it is confidential information let alone under oath claiming that i could get sick and cause undue hardship. Ex file 5 Agaj

Response:

Plaintiffs deny this statement.

48. Approximately 40 employees applied for religious exemptions from the vaccine

requirement. If BC had granted all 40 exemptions, the University would have incurred increased costs and burdens to ensure the employees did not transmit the virus. BC would have needed to test these individuals for COVD-19 3-4 times per week, as well as test any person in proximity to an unvaccinated individual. During the pandemic, BC hired temporary nurses to take the swabs, and BC tracked individuals who missed tests. BC then sent all employee swabs to the Broad Institute for processing to maintain confidentiality and ensure that no employee processed another employee's

test. Had approximately 40 more employees been unvaccinated on-campus, BC would have had increased testing costs. Trainor Aff. ¥ 9.

Well you have granted more than hundreds do the math 18500 : 99.3 = 150 give or take

Not to mention 1000 of unvaccinated contractors. EX file 1 AGAJ

49. In addition, BC would have needed to arrange for these unvaccinated employees to be separated from others, which was an increased challenge for employees whose jobs required movement around campus. BC would have needed to inform unvaccinated employees 'supervisors, while maintaining the privacy of the unvaccinated employees' vaccination status. Trainor Aff. ¥ 9.

Response:

Plaintiffs deny this statement. You never cared about your employees when you lot were honeymooning at home we were breaking our backs with work doing things above and beyond.

50. The risk of potential outbreak to the BC community —particularly where one could be avoided by vaccination —posed considerable non-economic costs to the University. Boston College committed to providing an in-person education in the midst of the pandemic, representing its students and their parents that it would follow strict protocols and procedures to maintain a safe environment to do so. See Trainor Aff., Exs. 6, 7. Vaccination was an essential 14 Case 1:24-cv-10884-JEK Document157_ Filed 07/21/26 Page 15 of 16 component to ensure a protected environment. Accommodating Mr. Agaj's incomplete request for an exemption had the potential to drastically undermine the faith those community members had entrusted in the school. If current and prospective students and their parents no longer trusted the University to provide the necessary environment for learning —due to an avoidable breakout —BC would have faced enormous reputational cost. Moreover, avoidable breakouts of deadly infections would expose the University to litigation risk. Trainor Aff. § 8; Johnson Aff. § 14.

Plaintiff objects to this statement on the grounds that How can i give you or infect you with e disease that i don't have. If you cared about people, you would have dropped

the tuition price. Covid pandemic made Boston College richer, not poorer. Stole wages from employees, retirement funds, committed covid fraud and embezzled millions on government funds did not pay taxes and misappropriate them and bought real estate.

Now you complain about undue hardship from a landscaper after raking 1.2 bllion.

Ex file 2 AGAJ

Respectfully submitted,

CERTIFICATE OF SERVICE

I hereby certify that a copy of this document has been sent via e-mail to Mr. ALAN D. ROSE,Ms Meredith Doty Counsel for Defendant BOSTON COLLEGE.

And A Copy was filed on the  UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF MASSACHUSETTS Clerks office.

PRO SE. AVENIR AGAJ on behalf of itself Plaintiff

14 PAUL STREET

BURLINGT0N

MA,01803

CELL:  857-544-0780

Avenir Agaj Signed: *AVENIR AGAJ*

Date: AUGUST 11,2O26

Aviaga10@hotmail.com