EXHIBIT    2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVENIR AGAJ,<br><br>      Plaintiff,<br><br>      v.<br><br>BOSTON COLLEGE,<br><br>      Defendant. | Civil Action No. 1:24-CV-10884-JEK |

## DEFENDANT BOSTON COLLEGE'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

Pursuant to Fed. R. Civ. P. 33, Defendant Boston College ("Boston College") hereby serves its answers and objections to Plaintiff Avenir Agaj's ("Agaj" or "Plaintiff") First Set of Interrogatories to Defendant (the "Interrogatories"). Boston College reserves its right to supplement these answers and objections as may be necessary.

## ANSWERS TO SPECIFIC INTERROGATORIES

## INTERROGATORY NO. 1

Identify all witnesses with knowledge relevant to the subject matter of this action.

## RESPONSE TO INTERROGATORY NO. 1

Boston College objects to Interrogatory No. 1 on the grounds that it is vague, overly broad, unduly burdensome, and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of these objections, Boston College identifies the following individuals:

| Name | Place of Employment |
|---|---|
| Charles Baldwin | Boston College<br>Landscape Services Operations |
| Douglas W. Comeau, D.O. | Boston College |

1

| Name | Place of Employment |
|------|---------------------|
|  | Director of University Health Services |
| Welkin E. Johnson, Ph.D. | Boston College<br>Professor and Chair of Biology Department |
| Patricia Lowe | Boston College<br>Associate Vice President, University Title IX/ADA Coordinator |
| Scott McCoy | Boston College<br>Associate Director of Landscape Services |
| Robert J. Nascimento, M.D. | Boston College<br>Head Team Physician and Medical Director of Sports Medicine |
| Fr. Anthony Penna | Boston College<br>Associate Vice President and Director of Campus Ministry |
| Edilma Hosein Reyes | Boston College<br>Associate Director, Advancement |
| David Trainor | Boston College<br>Vice President for Human Resources |

## INTERROGATORY NO. 2

Set forth in detail how you would compute each category of Plaintiff's claim of damages, whether or not You believe you are liable for such damages.

## RESPONSE TO INTERROGATORY NO. 2

Boston College objects to Interrogatory No. 2 on the grounds that the Interrogatory seeks attorney work product and hypothetical information. In addition, discovery is not yet complete, and thus, this Interrogatory is premature. Boston College also objects to Interrogatory No. 2 on the grounds that it seeks information in Plaintiff's possession and not in the possession of Boston College. Boston College further objects to Interrogatory No. 2 on the grounds that it has no burden to establish or compute Plaintiff's alleged damages, the existence of which Boston College expressly denies. As discovery is ongoing, Boston College reserves the right to amend, alter, modify, and/or supplement this answer.

## INTERROGATORY NO. 3

Identify and set forth all documents relative to the subject matter of this action, including,

2

but not limited to, pertinent insurance agreements, physical evidence, or information of a similar nature, including in your identification the custodian, location, and general description of same.

## RESPONSE TO INTERROGATORY NO. 3

Boston College objects to Interrogatory No. 3 on the grounds that it is vague, overly broad, and unduly burdensome. Subject to and without waiver of these objections, Boston College states that, pursuant to Fed. R. Civ. P. 33(d), the answer to this Interrogatory may be derived or ascertained from documents produced pursuant to Boston College's Responses to Plaintiff's First Set of Requests for Production of Documents to Defendant. Boston College reserves the right to amend, alter, modify, and/or supplement this answer.

## INTERROGATORY NO. 4

Set forth in detail how you determined Plaintiff was not qualified for a reasonable accommodation.

## RESPONSE TO INTERROGATORY NO. 4

Boston College objects to Interrogatory No. 4 on the grounds that it is vague, overly broad, unduly burdensome, and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Boston College also objects to Interrogatory No. 4 on the grounds that it previously provided the information requested in an earlier filed action. Subject to and without waiver of these objections, Boston College states it that took significant steps to protect its campus community from risks associated with SARS-CoV-2. Those risks include infection, the spread of infection, hospitalizations, serious illness and death. As an educational institution that relies upon in-person interaction, Boston College took reasonable measures to ensure the resumption of regular University operations for the 2021-2022 academic year. As a component of its return to regular University operations, Boston College mandated

3

that faculty and staff had to be fully-vaccinated prior to the start of the 2021-2022 academic year. Boston College granted exemptions only for legitimate religious and medical reasons.

Boston College provided substantial notice to employees who wished to submit requests for an exemption to the COVID-19 vaccination requirement. The notice to employees said that "vaccination exemptions will be granted for legitimate religious and medical reasons" and directed those who wished to apply for a religious and/or medical exemption to Boston College's Office for Institutional Diversity website. This website contained a COVID-19 Vaccination Exemption Request Form.

The applicant was instructed to check the box or boxes indicating the reason for the exemption request. Then, the applicant was asked to identify any special circumstances for requesting an exemption. Furthermore, applicants were told to "provide supporting medical or religious documentation and any additional information....." If the request was not supported by a letter from a physician or religious leader, Boston College would typically contact the applicant and request such information, as it was entitled to do. For medical reasons, this meant that the applicant should submit a letter from a physician stating the specific medical contraindication to vaccination. For example, if a physician—preferably a treating physician—credibly stated that the applicant would suffer an allergic reaction to vaccination, or that vaccination would result in other adverse medical consequences, Boston College would typically grant the request. In the case of religious exemptions, the request would go to the Office of Institutional Diversity. Personnel in that office would review the request and determine whether the request was supported by a letter from a pastor or religious leader. In order for a request for a religious exemption to be granted, Boston College would have to be satisfied that the stated reason was religious in nature, as opposed to, for example, objection to vaccination based on moral, ethical,

4

philosophical, or personal concerns.  In many cases, review of the applicant's stated reasons for

the request, or review of the letter from the religious leader, revealed that the reason was not

religious, but moral, ethical, philosophical, or personal.  With these guidelines and principles in

place, Boston College denied almost all requests for religious exemptions.

On June 23, 2021, Mr. Agaj submitted his exemption request, with three reasons

checked: medical, religious, and other special circumstance.  In the section of the form to

describe the "special circumstance," Mr. Agaj wrote as follows:

1. "It would have an adverse effect on my immune system on  Medium and long term not to
   mention immediate side effects
2. It goes against my religius belives faith healing
3. As long as idemnty for vaccines is in place i dont feel safe having one."

In the section that asked for medical or religious documentation, Mr. Agaj wrote, "Please grant

me exemption for the reasons stated above Respect my rights."  On the same day, Ms. Hosein

from the Office for Institutional Diversity responded to Mr. Agaj and stated, "Thank you for

your email and request form. For medical exemptions, please provide, at minimum, a letter from

your healthcare provider that clearly states the contraindication to the vaccination.  For religious

documentation, please provide a letter from your spiritual leader or advisor that clearly states the

religious reasoning for exemption."  Mr. Agaj responded to the Office for Institutional Diversity

and stated "Hi Your request to provide documents about my medical record or religious belives

violates  my rights under disability act 151B  religius freedoms ACLU and privacy laws  1B

chapter 214 Title 1 Part 3.Frankly you should not demand that i provide proof.Please respect my

rights !"

On the following day, Patricia Lowe of the Office for Institutional Diversity responded to

Mr. Agaj and explained that Title VII permits the University to ask for an explanation or

documentation, and informed Mr. Agaj that Boston College was "unable to effectively evaluate

your exemption request without some explanation or documentation of the nature of your medical or religious belief and how it applies to the vaccine requirements." Although Mr. Agaj submitted a later request for exemption on July 25, 2021, referring to his Bogomils religion, folk medicine of ethnobotany, his "faith and morals," and stating that the COVID-19 vaccine "is a Health Risk for healthy people," he never submitted any medical or religious documentation to support his exemption request. Accordingly, Boston College denied his request for exemption. Boston College also refers to its Response to Interrogatory No. 6, incorporated herein by reference.

Further answering, pursuant to Fed. R. Civ. P. 33(d), Boston College states that the answer to this Interrogatory may also be derived or ascertained from documents responsive to Request Nos. 1, 2 and 10 in Boston College's Responses to Plaintiff's First Set of Requests for Production of Documents, which will be produced pursuant to a mutually agreed upon protective order.

**INTERROGATORY NO. 5**

Identify all persons who made claims against you for religious discrimination on account of your mandatory vaccination policy, including in your identification the status of such claim and whether the person obtained a monetary settlement or award.

**RESPONSE TO INTERROGATORY NO. 5**

Boston College objects to Interrogatory No. 5 on the grounds that it is vague, overly broad, unduly burdensome, and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Boston College also objects to Interrogatory No. 5 on the grounds that "made claims" is undefined, vague and/or ambiguous. Boston College further objects to Interrogatory No. 5 on the grounds that it seeks information concerning claims

6

made by students which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of these objections, Boston College states that, other than the Plaintiff in this action, Jose Bento, a current employee of Boston College, filed a religious discrimination claim with the EEOC and MCAD, which was dismissed by the EEOC and MCAD. Mr. Bento did not receive any monetary award.

## INTERROGATORY NO. 6

Set forth in detail how you determined Plaintiff's request for a reasonable accommodation would create an undue hardship.

## RESPONSE TO INTERROGATORY NO. 6

Boston College objects to Interrogatory No. 6 on the grounds that it is vague, overly broad, unduly burdensome, and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Boston College also objects to Interrogatory No. 6 on the grounds that it previously provided the information requested in an earlier filed action. Subject to and without waiver of these objections, Boston College states that granting an exemption to its vaccination requirement to Mr. Agaj would have imposed a significant hardship on Boston College's operations and potentially endangered the health and safety of its staff, faculty, and students. In 2021, Boston College served a community of over 15,000 students and 3,500 employees.

According to the CDC, COVID-19 is highly contagious and can spread very quickly. It can be spread by airborne transmission, including exposure to the virus in small droplets and particles that can linger in the air for minutes to hours. These viruses may be able to infect people who are further than 6 feet away from the person who is infected or after that person has left the space. Transmission of COVID-19 may occur indoors or outdoors; anywhere where one

7

may come into contact with an infected person. Individuals infected with COVID-19 can be contagious regardless if they have symptoms, and the virus can spread easily from them to other people.

Mr. Agaj's requested accommodation would have caused an undue burden to Boston College because Mr. Agaj, as an unvaccinated individual, would have potentially jeopardized the health and safety of members of the Boston College community, including but not limited to: Mr. Agaj; the other landscape workers; the students who worked with the landscape workers during the summer; and the Boston College employees, students, and guests who came into contact with Mr. Agaj across the Boston College campus. Due to the highly transmissible nature of COVID, if infected, Mr. Agaj could have passed the virus on to other individuals in the Boston College community, who could have then infected others. Contact tracing, which is aimed at notifying individuals of potential exposure and preventing further transmission, has limited effectiveness and generally only prevents a fraction of onward transmissions from contacts. In addition, the cost and time required for Boston College to monitor compliance with alternative and ongoing safety measures by Mr. Agaj, and to protect the community from Mr. Agaj's status as an unvaccinated individual, would create a substantial increased cost to Boston College, while potentially decreasing the safety to any member of the Boston College Community.

On a daily basis, Mr. Agaj came into contact with numerous landscape workers indoors and inside his work truck. Mr. Agaj, as part of his responsibilities, also came into contact, indoors, with numerous members of the Boston College community. Each morning, all union employees were required to "swipe in" and receive daily work assignments from an operations supervisor. The Landscape Services staff consisted of approximately twenty-eight individuals, at

8

least half of whom—including Mr. Agaj—swiped in at 300 Hammond Pond Parkway. In addition, all of the trades personnel entered at the same location to swipe in, and their supervisors as well as management staff shared that building. The exact number of people Mr. Agaj typically came in contact with on any given day is difficult to discern, but it was in the dozens, at least. Furthermore, landscape operations supervisors conducted team meetings when necessary with all of the landscape services staff; these meetings were typically held indoors.

At times during the day, Mr. Agaj travelled by truck between work sites across the campus. As he travelled, Mr. Agaj was often in the truck with one or two other landscape workers. Another aspect of landscape workers' duties included disposal of furniture and other items. The Facilities Department has a queue of disposal requests, removal of desks, chairs, sofas, and other items. Boston College sends at least two people to the sites, which are generally indoors, for removal and disposal purposes.

Throughout the day, the landscape workers, including Mr. Agaj, typically took coffee and lunch breaks at various indoor break rooms across campus. During such breaks, given that people were eating and/or drinking, people were typically unmasked.

A significant part of the duties of landscape workers was event management for meetings, conferences, club gatherings, barbeques, and other activities. Mr. Agaj was a split week worker: he worked on weekends, when there were frequently events that the landscape workers worked on. Landscape workers, including Mr. Agaj, were responsible for setting up indoor and outdoor venues (e.g., tables and chairs) for various events held across campus throughout the year. When performing these tasks, Mr. Agaj, and any other landscape workers assigned, would inevitably come in contact with other Boston College staff, students, and/or visitors. For these purposes, landscape workers worked in teams of two people, sometimes four,

9

carrying, placing, and removing tables, chairs, and other equipment for events, and breaking down the equipment post event, picking up trash bags, and traveling together.

During the colder months when temperatures were low, landscape workers, including Mr. Agaj, often worked indoors for "shop" cleanup and organization days. Shop cleanup involved review of inventory and equipment and organizing supplies. This work was also done in groups.

To accommodate Mr. Agaj's request Boston College would necessarily have had to engage in alternative measures to ensure the safety of the Boston College community, though none of those measures would be as successful as vaccination. These measures would have created a substantial increased cost to Boston College, particularly considering the increased risk of COVID-19 infection at the time of Mr. Agaj's termination. For example, alternative measures such as monitoring Mr. Agaj's compliance with masking or social distancing; keeping Mr. Agaj fully separated from immunocompromised individuals; and strategically coordinating and/or limiting the number of individuals with whom Mr. Agaj worked would require Boston College to expend significant time and resources and disrupt the work of his department. Such coordination may not have even been possible for Boston College to undertake, given the ever-changing responsibilities of Mr. Agaj's position and the variety and number of individuals with whom he worked and came into contact.

Further answering, pursuant to Fed. R. Civ. P. 33(d), Boston College states that the answer to this Interrogatory may also be derived or ascertained from documents responsive to Request Nos. 14, 20, 33, and 34 in Boston College's Responses to Plaintiff's First Set of Requests for Production of Documents. Those documents include, for example, the Question and Answer document between University Health Services Director Dr. Douglas Comeau and virologist and Department of Biology Professor and Chair Welkin Johnson, published August 31,

10

2021, regarding Boston College's COVID-19 vaccination rate and testing results; the summary report, *Scientific Support for the Implementation of Mandatory SARS-CoV-2 Vaccination Policies on University Campuses*, by Dr. Johnson; and articles reviewed by Dr. Johnson. The high vaccination rate at Boston College lessened the spread of infections among those on campus and likely lessened hospitalizations and serious illness among those on campus. Dr. Johnson's summary report demonstrates that vaccination requirements were effective at reducing the spread of infection, hospitalization, and serious illness.

## INTERROGATORY NO. 7

Identify all persons to whom you granted a reasonable accommodation relative to your mandatory vaccination policy, including in your identification whether such was on the basis of medical need, religion, or otherwise.

## RESPONSE TO INTERROGATORY NO. 7

Boston College objects to Interrogatory No. 7 on the grounds that it is vague, overly broad, unduly burdensome, and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Boston College also objects to Interrogatory No. 7 on the grounds that information concerning requests for exemption based on medical grounds are not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Judge Kobick's Order dated November 12, 2024, "[t]o the extent Agaj seeks to assert a claim of discrimination based on his medical practice of ethnobotany, that claim will be dismissed because Title VII and M.G.L. c. 151B do not forbid discrimination on the basis of medical practice. See 42 U.S.C. § 2000e-2(a); M.G.L. c. 151B, §§ 4(1), (IA)." Boston College further objects to Interrogatory No. 7 to the extent it seeks information the disclosure of which would require Boston College to violate its

11

obligations under 42 U.S.C. §§12112(d)(3)(B), (4)(C)(1994); 29 C.F.R. §1630.14(b)(1)(1998); 20 U.S.C. § 1232g; and 34 CFR Part 99; and/or otherwise disregard the confidential and/or private nature of the information requested.  In addition, Boston College objects to Interrogatory No. 7 on the grounds that it seeks information concerning student accommodation requests which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 8**

Set forth all facts in support of your Defense number 15, i.e. that Plaintiff was allegedly engaged in misconduct.

**RESPONSE TO INTERROGATORY NO. 8**

Boston College objects to Interrogatory No. 8 on the grounds that it is vague, overly broad, and unduly burdensome, and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Boston College also objects to Interrogatory No. 8 on the grounds that it previously provided the information requested in an earlier filed action. Subject to and without waiver of these objections, Boston College states that shortly after Mr. Agaj was hired, he was involved in an incident with a co-worker.  According to the co-worker, who later informed the police of the incident, the following occurred:

Mr. Collins stated that he, along with Facilities employees Mr. Lopes, Mr. Doraiswami, and Mr. Agaj, was vacuuming up piles of leaves on the Fire Lane behind Boston College's Shaw House dormitory on November 5, 2020.  Two Facility Trucks were parked on nearby Beacon Street.  Mr. Collins stated that he was vacuuming leaves with Mr. Doraiswami and Mr. Lopes; these three individuals were in the main truck.  Mr. Agaj was in the second truck acting as a safety vehicle.  Mr. Collins stated that he was upset that not all of the people were outside

12

helping address the leaf piles. Mr. Collins started to raise his voice.  Mr. Lopes got out of the first truck and began to help, and Mr. Agaj got out of the second truck and hopped into the first truck.  Mr. Collins stated that this made him upset, and he began to raise his voice and move his hands in a gesticulating manner.  Mr. Collins then shouted to Mr. Lopes, "get him out of that fucking truck to help us," as he was extremely agitated with the situation.  Mr. Collins stated that Mr. Agaj exited the truck, approached him, and started shouting "what's your fucking problem, I'll kick your ass," and was face-to-face with him.  Mr. Collins said that Mr. Agaj chest-bumped him as Lopes intervened and separated them.  Mr. Agaj then returned to the safety truck.

Further answering, co-worker Mr. Collins went to the Boston College Police Department and related to them his version of what had transpired.  In view of the fact that Mr. Agaj had only been on the job for a few weeks when the incident occurred, and although he could have been terminated, Boston College decided to suspend him for one day, without pay, in December 2020, and his probationary period was extended for two months.  This incident was highly unusual in the Boston College workplace.  The incident required the time and attention of numerous people in the Facilities Department, Human Resources Department, and the Boston College Police Department.  In addition, Agaj did not take suggestions from colleagues or University management, had his own way of doing things, and created friction with his coworkers.

Further answering, Boston College states that, pursuant to Fed. R. Civ. P. 33(d), the answer to this Interrogatory may also be derived or ascertained from documents responsive to Request Nos. 20 and 26 in Boston College's Responses to Plaintiff's First Set of Requests for Production of Documents, which will be produced pursuant to a mutually agreed upon protective order.

13

Respectfully submitted,

BOSTON COLLEGE

By its attorneys,

*/s/ Alan D. Rose*
Alan D. Rose (BBO # 427280)
Meredith Wilson Doty (BBO # 652220)
ROSE LAW PARTNERS LLP
One Beacon Street, 23rd Floor
Boston, Massachusetts 02108
Telephone: (617) 536-0040
Facsimile: (617) 536-4400
adr@rose-law.net
mwd@rose-law.net

Date: May 7, 2025

14

## VERIFICATION

I, Patricia Lowe, hereby state that I have read the foregoing Interrogatory Answers, that the information contained in them is derived from various sources, and that while I do not have direct knowledge of all matters set forth in the Answers, the Answers are accurate to the best of my knowledge and belief.

Signed under the pains and penalties of perjury, this ___ day of May, 2025.

Boston College

15

## CERTIFICATE OF SERVICE

I, Alan D. Rose, hereby certify that on May 7, 2025, a true copy of the above document was served to Plaintiff's counsel via email:

Jay Marshall Wolman
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
702-420-2001

/s/ Alan D. Rose
Alan D. Rose

Date: May 7, 2025