**UNITED STATES DISTRICT COURT**

**FOR THE**

**DISTRICT COURT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE
2026 SEP -8 P 3:51
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| **AVENIR AGAJ** | ) | |
| **Plaintiff** | ) | |
| **V.** | ) | **Civil ACTION No. 1:24 –CV-10884-JEK** |
| **BOSTON COLLEGE** | ) | |
| **Defendant** | ) | |

**PLAINTIFF AVENIR AGAJ MOTION IN OPPOSITION TO DEFENDANT TRUSTEES OF BOSTON COLLEGE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

**PRO SE .**

**AVENIR AGAJ**

**Plaintiff's Memorandum in Opposition to Boston College's ("BC") Motion for Summary Judgment, Opposition to Boston College's Concise Statement of Material Facts ("Opp. to SMF'), Additional Statement of Facts, and "Oppositions" to Boston College's Affidavits clearly and factually state and expose Defendant Boston College Vague, Pretextual, Generalized defenses and justifications. Plaintiff's Opposition, filings are admissible, supported, and material fact information! Plaintiff Avenir Agaj submits and contends that there is a genuine issue of material fact, and that summary judgment should be DENIED.**

*Groff v. DeJoy*

"It is against my religion to work on Sundays."

Before *Groff*, an employer could respond, "Unless you can have someone pick up your shift, it's an undue burden to redo the schedule and unexcused absences can be counted against you." After *Groff*, the employer's response should be, "Let's talk about this." Undue hardship is now much more difficult to establish, and employers will be advised to think hard about relying on it as a defense except in the most obvious cases. It is likely that the focus will now shift to the reasonableness of the request itself as it has been under the ADA for years. But we will have to wait to see how lower courts begin to interpret and apply *Groff*.

1 42 U.S.C. § 2000e(j). 2 *Groff v. DeJoy,* 600 U.S. 447 (2023).3 *Id.* at 455.

4 *Groff v. DeJoy,* No. 19-1879, 2021 WL 1264030, at *5 (E.D. Pa. Apr. 6, 2021). 5 *TWA v. Hardison,* 432 U.S. 63 (1977).6 *Groff v. Dejoy,* 35 F.4th 162, 175 (3d Cir. 2022). 7 *cert.* granted (Jan. 13, 2023).8 42 U.S.C. § 2000e(j).

I. THE UNDISPUTED MATERIAL FACTS ESTABLISH THAT BOSTON COLLEGE COULD PROVIDE PLAINTIFF WITH AN EXEMPTION TO ITS VACCINATION REQUIREMENT WITHOUT UNDUE HARDSHIP .

EEOC ,Title VII of the Civil Rights Act of 1964 requires employers to make reasonable accommodations for an applicant or employee whose sincerely held religious belief, practice, or observance conflicts with a work requirement, unless providing the accommodation would create an undue hardship for the employer. The law aims to prevent individuals from being forced to choose between their religious convictions and practices and their job.

WHAT IS A RELIGIOUS ACCOMMODATION?

A religious accommodation is an adjustment to a work requirement that will allow the employee to comply with their religious beliefs, which need not be confined to traditional concepts of religion. The employer's duty to accommodate will usually entail making a special exception from, or adjustment to, a particular work requirement so that an employee or applicant will be able to observe or practice their religion.

WHAT IS AN UNDUE HARDSHIP? An undue hardship arises when the burden of granting an accommodation would be substantial in the overall context of an

**employer's business. An undue hardship could include increased costs; reduced productivity; or infringements on other employees' job rights, such as accommodations that reasonably threaten to create a hostile work environment or create a substantial risk to workplace safety, health, or security. However, coworker objections based on hostility to religion or customer fears or prejudices are not an undue hardship. Whether an accommodation creates an undue hardship depends on the particular facts. For example, if wearing pants when working near a particular type of machine is necessary for safety reasons, an accommodation to allow an employee to wear a loose-fitting skirt for religious reasons while working near that machine may cause undue hardship. While an employer can refuse to provide a particular accommodation if it would pose an undue hardship, employers and employees should confer fully and promptly to explore other available accommodation options.( Defendant Boston College did not CONFER with plaintiff AVENIR AGAJ regarding any possible accommodation instead i was shown the door because of my sincere religious beliefs.)**

**CAN EMPLOYERS DISCRIMINATE AGAINST SOMEONE WHO NEEDS A RELIGIOUS ACCOMMODATION?**

**No, employers cannot refuse to hire, terminate, or otherwise discriminate as to any term or condition of employment because someone may need a religious accommodation that could be provided without undue hardship. The EEOC has taken the position that employers also may not retaliate against any applicant or employee for seeking a religious accommodation.**

**HOW CAN AN EMPLOYEE REQUEST A RELIGIOUS ACCOMMODATION?**

**An employee seeking religious accommodation should make their employer aware of their need for accommodation for a religious reason. The request need not be in writing, and so long as the employer knows the employee needs religious accommodation, no "magic words" are required.**

**A. Disputed Facts Concerning Agaj's Job Duties plaintiff Avenir Agaj outright OBJECTS and DISPUTES a number of material facts in BC's Concise Statement of Material Facts, as they are used out of contests are vague and prove no undue hardship defense.**

**B.I plaintiff Avenir Agaj will provide a list of undisputed Material Facts which will prove assumption, vague costs, precedent fears, lack of personal knowledge, Intentional**

**religious and medical discrimination, harassment, retaliation and unlawful termination.**

**1). Landscaper III job description as per contract. Exhibit 1.**

**Provide maintenance of exterior campus landscapes to include lawns, gardens, flower beds, hedges, walkways, plazas, streets and all associated components such as trees, shrubs, irrigation systems. Stabilization, repair and replacement of fences, walls, curbs, etc. Duties, functions and responsibilities may include: mow lawns, string trim, basic pruning of ornamental plants and hedges, weed planting beds, rake leaves, hand-pick loose trash, external barrels, dumpsters, etc., stabilization, repair, and replacement of fences, gates and masonry features; clean out drainage ditches and culverts. Loading operations for materials handling. Mix fertilizer according to instructions and calibrate sprayers to apply fertilizers as directed; calculate appropriate application rates; spray lawns, shrubs, and trees with fertilizer, herbicides, and insecticides. Assist with snow removal operations. Duties, functions and responsibilities may include: hand shoveling stairs and walkways, spreading ice melt products, operating truck mounted plows and sanding equipment. Operate skid-steer loaders and loading equipment involved in snow removal operations and as needed in support of other Landscape Services operations. Support the University with office moves and furniture moves, special event and function setups. Duties include moving furniture, setting up chairs and tables, moving equipment, transporting equipment/boxes from campus to/from warehouse, and other duties as assigned. Whenever Management determines it possible, the Landscaper II] may be assigned to work with a Gardener in order to assist in Gardening duties which will expand the Landscaper III's skills and relevant experience. This job description is intended to provide a summary of the position. It is not an exhaustive list of all of the duties. An employee may be required to perform other duties that are related to the primary functions listed in the job description.**

**2)Plaintiffs work for BC was required to be performed on campus different locations,UPPER,MIDDLE,LOWER,BRIGHTON,NEWTON,PINE MANOR ECT. that he was required to perform the majority of his tasks alone LOADER ,BACK HOE,SKID STEER,MOWER ,salt Truck single operator equipment, Same goes for tools,leaf blower, wheed wacker, rake,showel,broom ,hedge trimmers ect you only neen one person to use them. I did not need to be indoors with other people cause my job was mostly outdoors and i did not need to be indoors unless told to do so.If i was essential employee why i got fired then not so essential after all??? ECF 167, § Is not true and i object that Each morning, all union employees were required to "swipe in" at 300**

**Hammond Pond Parkway to receive daily work assignments from an operations supervisor. I received work assignments on my letter box and mostly via phone and e-mails especially during the weekend and swiped in different locations close to the working area. The Landscape Services staff comprised approximately twenty-eight people, at least half of whom, including Mr. Agaj, swiped in at 300 Hammond Pond Parkway. Not true fact my job assignment varied so did the punch in records Boston College had different punch in stations in all different parts of the campus and it was not mandatory that i punched in at 300 Hammond pond . In addition, approximately 90 employees from Custodial Services reported to, and departed from the same location, and their supervisors as well as management staff shared that building. Landscaping services is 1 shift custodial has 3 shift service not all of them checked in at 300 Hammond pond Id., | 7. e Landscape operations supervisors conducted team meetings, when necessary, plaintiffs object not in person with all of the landscape services staff (remember social distancing); these meetings were typically held indoors not true fact objection show prove.. Id., Plaintiff objection Throughout the day, the unvaccinated landscape workers, contractors students including Mr. Agaj, typically took coffee and lunch breaks at various indoor break rooms across campus. PROVE ? I would take my breaks outside ,in my personal vehicle, and numerous shops outside the campus, Id., § 9. e The job duties Agaj performed included work indoors with two or more people, unvaccinated contractors, staff ,students moving and disposing of furniture from indoor locations, including classrooms, and changing the floors in the sports arena. With unvaccinated contractors,vendors,suppliers, students,staff and faculty Id., Jf 4, 5. e The majority of work performed by Mr. Agaj was performed with a partner, unvaccinated contractor, staff,student,faculty in part for safety reasons, or with a group due to the number of people necessary to complete a task. Id., 11. e During the colder months when temperatures were low, landscape workers, contractors,vendors,supliers,staff,faculty,students including Mr. Agaj, often worked indoors for “shop” cleanup, which involved reviewing inventory and equipment and organizing supplies. 12. Agaj does deny and controvert (and therefore admits) that he travelled by truck between work sites with one or two other landscape workers, came into contact with numerous unvaccinated landscape workers ,contractors,custodians,students,faculty indoors and inside his work truck, and came into contact with other Boston College unvaccinated staff, students, and/or visitors during the performance of his tasks. Plaintiff controvert that BC repeatedly communicated its mandatory vaccination policy to employees and the process for seeking an exemption amounting to harassment and intimidation tactic. Now if an employee says i cant have a vaccine because of my religion and you keep repeatedly sending him messages to take one how is that the same as asking a**

**Muslim or a Jew to eat something that is forbitten. AND YOU KEEP OFFERING THAT.in complete disregard for their beliefs. 167, Jj 20-22, 25. Agaj also admits to the content of his first request for exemption on June 23, 2021, which stated that vaccination "goes against by religious believes" [sic] but did not identify his religion.NO MAGIC WORDS REQUIRED EEOC GUIDE. But in the other hand lied that the ministry had evaluated my request. He also admits that he was lied by Boston College in support of his exemption request.and received no answer from Patricia Lowe e-mails Christine la Flamme. Id., 9] 27-33.° After the denial of his first request, he admits that he made a second request for exemption, on July 26, 2021, which likewise did include the information requested by Boston College.again no response by oid. Id. 99] 35-36.4 He deny or controvert that he was advised by BC on August 6 that his exemption was denied, and that if he failed to upload proof of vaccination by August 13, 2021 he would not be permitted on campus. Whether there is substantial and credible evidence to show that the plaintiff left work voluntarily with good cause attributable to the employer or its agent,**

**1. The Plaintiff Avenir worked full time as a Level III landscaper for the employer, a private university, Boston College from October 19, 2020 until August 13, 2021.2. In June of 2021, the employer sent an e-mail to all employees suggesting that they become vaccinated against the COVID-19 virus. The vaccination was not a requirement of continued employment at the time. Employees were given the opportunity to submit an exemption based upon a medical or religious exemption in lieu of obtaining the vaccine.**

**2. The plaintiff has a sincerely held religious belief in a named religion BOGOMIL and medical practice Ethnobotany which prevents him from receiving medicines, including vaccinations, which are not found in nature. The plaintiff has always followed his religion and has not received other vaccinations in the past.**

**3. On June 23, 2021, the claimant submitted a request for an exemption to the employer's human resources department ("HR") based on his religious beliefs. The request for an exemption was denied, and plaintiff was lied email EDILMA HUSSEIN**

**4. In July 2021, the employer implemented a mandatory vaccination policy as a condition of continued employment where all employees of the university must be vaccinated against the COVID-19 virus or be approved for either a medical or religious exemption by August 13, 2021. The employer advised employees of its COVID-19 vaccination policy by e-mail in July 2021.**

**5. The plaintiff became aware of the COVID-19 vaccination policy when he received the e-mail the employer sent to all employees in July 2021.**

**6. The employer does not require any other vaccinations as a condition of employment or continued employment and from april 2023 has removed vaccination as condition of employment.**

**7. The employer had an expectation that employees will be fully vaccinated, or have an approved exemption, by August 13, 2021.**

**8. The employer communicated its expectation to employees via the e-mail sent in July of 2021.**

**9. In July of 2021, the claimant spoke to the manager of facilities about the change in the vaccination policy from suggested to mandatory. The manager of facilities Ms. Christine La flamme advised the plaintiff to submit a second exemption request to HR. emails**

**10. On July 25, 2021, the plaintiff submitted a second request for exemption from the**

**COVID-19 vaccination policy to HR.**

**11. The plaintiff did not receive a response or decision to his second exemption request.**

**12. On August 5, 2021, the claimant received an e-mail from the vice president of HR which stated, in pertinent part, "... Being fully vaccinated by August 13th is a condition of employment and required in order to return to campus this fall. Any employee who is not fully vaccinated will not be permitted to enter the campus after 5:00pm on Friday, August 13 on the other hand another copy of an email was found on plaintiff employee personal file.**

**14.Plaintiff has no idea of the second email from Mr. David Trainor vice president of HR at BC .What was that second email doing on my personal file. Why it was not sent to me.**

**Exhibit 2. Letter Mr. David Trainor august 13, 2021 A/B**

**Dear Colleague:**

**As of close of business today (August 13, 2021), our records indicate that you have not reached full vaccination against COVID-19. You will be considered fully inoculated once you have reached fourteen days after your final vaccine dose.**

**You may continue to come to campus and work but you must wear a mask at all times when at BC. The mask must be worn both indoors and outdoors while on campus, even if working in your office or workspace. Once you have completed the fourteen-day period, you will no longer be required to wear a mask. Your respective vice president or dean has been informed of your status. Thank you for your attention to this important matter.**

**David P. Trainor Vice President, Human Resources**

**15.Human Resources will follow up with individuals who are not in compliance the week of August 16th."**

**16. On August 6, 2021, the claimant received an e-mail from the vice president of HR which stated, in pertinent part, "As you are aware, the University permitted employees to request exemption from the vaccination requirement for bona fide religious and medical reasons. The University reviewed all requests for exemption. Denials of exemption were based on a number of factors, including inadequate information or explanation of the basis for the request, and the undue hardship that would follow from permitting unvaccinated faculty and staff on campus, with potentially serious health consequences for all members of the [employer's] community. As you know from previous communications, [the employer] denied your request for an exemption from the vaccination requirement. We urge you to join the many thousands of your colleagues at [the employer] who have chosen to be vaccinated."**

**17. On August 13, 2021, the claimant received an e-mail from the vice president of HR which stated, in pertinent part, "As of close of business today (August 13, 2021), you have failed to upload proof of a vaccine. As such, effective August 14, 2021, you are NOT authorized to access [the employer's] campus or your work space. Your respective vice president or dean has been informed that you have failed to comply with the University's requirement as of this time. Human Resources will be in contact with you directly during the week of August 16, 2021 to determine next steps. In the meantime, you are not to come to campus. If you have any questions or believe this email was sent to you in error, please email [HR department]."**

**18. On August 16, 2021, the claimant called the HR director to inquire about his employment status and the director told the claimant he had been terminated on August 13, 2021 for failing to comply with the employer's COVID-19 vaccine requirements.**

**19.Boston College changed the policy on april 2023 and did not offer my job back.**

**20.Boston College allowed unvaccinated staff, faculty,students,contractor vendors, suppliers and visitors to be on campus while harassing,discriminating,retaliating,coercing me the plaintiff because of my religious beliefs BOGOMIL and medical practice Ethnobotany.**

**21.Boston College did not present a single piece of evidence or explenation or document why i plaintiff Avenir Agaj would pose an undue hardship and other unvaccinated exempted employees would not!**

**III. CONCLUSIONS AND REASONING:**

**The plaintiff did not leave work voluntarily because he was told he was terminated by the employer on August 13, 2021. Therefore, Section of the Law, the burden of proof is upon the employer to establish by substantial and credible evidence that the discharge of the claimant was attributable to undue hardship.Based upon the evidence presented, the employer has not met its burden. The defendant BC has a policy regarding a requirement that all employees be vaccinated against the COVID-19 virus or have an approved exemption as of August 13, 2021. The employer did not submit a copy of the policy to the court, nor do the e-mails submitted by the plaintiff provide information sufficient to determine if the policy is uniform on its face or in its application to the plaintiff or other employees. As such, the employer cannot establish that it discharged the plaintiff for a undue hardship uniformly enforced policy or rule. The plaintiff explained that by submitting the second request for an exemption within the permitted time frame he was complying with the employer's expectation. Since the employer's e-mail of August 6, 2021 does not indicate which exemption request was denied, the plaintiff assumed the e-mail was referencing the first request because he had not yet received notice that the second request had been approved or denied. As such, the plaintiff lacked the required state of mind to deliberately act against the employer's interest, as he believed his second exemption request was still under review. The employer did offer testimony, disputing the testimony of the plaintiff .In view of the evidence, the employer has not met its burden of proof in establishing the plaintiff was discharged for undue hardship.**

**Summary judgment is NOT warranted.**

**CONCLUSION**

**For the above reasons and those in its original plaintiff AVENIR AGAJ respectfully requests that the Court DENY defendant Boston College its motion for summary judgment.**

**CERTIFICATE OF SERVICE**

**I hereby certify that I caused this document to be filed at clerks office in person and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper and/or electronic copies will be sent to those indicated as non-registered Participants.**

**PRO SE. AVENIR AGAJ on behalf of itself Plaintiff**

**Today 8 day of September 2026**

**14 PAUL STREET** **Signed :** AVENIR AGAJ

**BURLINGT0N** **Avenir Agaj**

**MA,01803**

**CELL: 857-544-0780** **Aviaga10@hotmail.com**