FILED
IN CLERKS OFFICE
2026 NOV -2 P 2:42
U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**

**FOR THE**

**DISTRICT COURT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **AVENIR AGAJ** | ) | |
| **Plaintiff** | ) | |
| **V.** | ) | **Civil ACTION No. 1:24 –CV-10884-JEK** |
| **BOSTON COLLEGE** | ) | |
| **Defendant** | ) | |

**PLAINTIFFS MOTION TO STRIKE IN OPPOSITION TO DEFENDANT TRUSTEES OF BOSTON COLLEGE'S MOTION TO ENJOIN PLAINTIFF FROM FILING CERTAIN PAPERS WITHOUT LEAVE OF COURT .AND MOTION TO STRIKE DEFENDANTS BOSTON COLLEGE PROPOSED ORDER.**

---

**PURSUANT RULE 12 (f) FEDERAL RULES OF CIVIL PROCEDURE PLAINTIFFS AVENIR AGAJ MOVS TO A MOTION TO STRIKE DEFENDANT TRUSTEES OF BOSTON COLLEGE'S MOTION TO ENJOIN PLAINTIFF FROM FILING CERTAIN PAPERS WITHOUT LEAVE OF COURT, AND MOTION TO STRIKE DEFENDANTS BOSTON COLLEGE PROPOSED ORDER FOR THE REASONS AND FACTS STATED BELOW.**

1) The motions filed by the defendant BOSTON COLLEGE is UNTIMELY because the time to respond has passed, and they have waved the right and skipped to take my deposition in which case the disagreements or objections would have been addressed or resolved, but they decided for whatever reasons follow the advice of my former attorney Mr. Jay Wolman not to take one during his discharge filings. Now the defense can't claim that they are surprised by plaintiffs' Avenir Agaj testimony. And can't plead to the court for a GAG order.

2)This filing by the defendant Boston College It is done with the MALICE intention to remind the court of the summary of Differences and Disagreements and Grievances that i plaintiff Avenir Agaj lawfully have raised regarding Exparte communications and cause unnecessary delay and a needlessly increase litigation cost in hiring an additional attorney in regard to the case.

3)Defendant Boston College has filed this motion on purpose at this time to draw the attention from the real issue at hand which is SUMMARY JUDGMENT and draw a further wedge between the court and me the plaintiff and is a clear attempt to INFUENCE COURTS ruling on merits for their advantage ,this strategy was used before successfully previously by the defendant Boston College to create disagreements with my former attorney Mr. Jay M. Wolman and that is in great part why attorney – client partnership failed due to interference by the opposing counsel.

4)The defendant Boston College did not present me a draft regarding this filing and did not fully confer regarding this filing under mandatory FRCP 11,In which the moving party must serve the exact motion for sanction to the opposing party.

Exhibit 1.e-mails Meredith Doty a.agaj 10/07/2026

5)The plaintiff Avenir Agaj has evidentiary support or will have it after a reasonable opportunity for further investigation or discovery.

6) A court **cannot** order sanctions simply because a defendant Boston College personally dislikes, disagrees with, or is annoyed by the plaintiff's valid filings.

7) **What Happens if a Defendant Files a Baseless Motion for Sanctions?**

Just as a plaintiff cannot file a baseless lawsuit, a defendant cannot file a frivolous motion for sanctions. If a defendant repeatedly files empty or vexatious sanction requests purely out of frustration or to harass the plaintiff, the **judge can turn those sanctions around** and penalize the defendant instead.

(f) Motion to Strike. The court may strike from a pleading, an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(g) Joining Motions.

(1) *Right to Join*. This rule may be joined with any other motion allowed by this rule.

(2) *Limitation on Further Motions*. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(3) *United States Officers or Employees Sued in an Individual Capacity*. A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

(4) *Effect of a Motion*. Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

(A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

(B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

(c) Motion for Judgment on the Pleadings. After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

(d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(e) Motion for a More Definite Statement. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed, but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

(f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(g) Joining Motions.

(1) *Right to Join*. This rule may be joined with any other motion allowed by this rule.

(2) *Limitation on Further Motions*. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(h) Waiving and Preserving Certain Defenses.

(1) *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)–(5) by:

(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or

(B) failing to either:

(i) make it by motion under this rule; or

(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2) *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

(A) in any pleading allowed or ordered under Rule 7(a);

(B) by a motion under Rule 12(c); or

(C) at trial.

(3) *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

(i) Hearing Before Trial. If a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

## *Notes*

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 2, 2024, eff. Dec. 1, 2024.)

Notes of Advisory Committee on Rules—1937

*Note to Subdivision (a)*. 1. Compare [former] Equity Rules 12 (Issue of Subpoena—Time for Answer) and 31 (Reply—When Required—When Cause at Issue); 4 Mont.Rev.Codes Ann. (1935) §§9107, 9158; N.Y.C.P.A. (1937) §263; N.Y.R.C.P. (1937) Rules 109–111.

2. U.S.C., Title 28, §763 [now 547] (Petition in action against United States; service; appearance by district attorney) provides that the United States as a defendant shall have

60 days within which to answer or otherwise defend. This and other statutes which provide 60 days for the United States or an officer or agency thereof to answer or otherwise defend are continued by this rule. Insofar as any statutes not excepted in Rule 81 provide a different time for a defendant to defend, such statutes are modified. See U.S.C., Title 28, [former] §45 (District courts; practice and procedure in certain cases under the interstate commerce laws) (30 days).

3. Compare the last sentence of [former] Equity Rule 29 (Defenses—How Presented) and N.Y.C.P.A. (1937) §283. See Rule 15(a) for time within which to plead to an amended pleading.

*Note to Subdivisions (b) and (d)*. 1. See generally [former] Equity Rules 29 (Defenses—How Presented), 33 (Testing Sufficiency of Defense), 43 (Defect of Parties—Resisting Objection), and 44 (Defect of Parties—Tardy Objection); N.Y.C.P.A. (1937) §§277–280; N.Y.R.C.P. (1937) Rules 106–112; *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 25, r.r. 1–4; Clark, *Code Pleading* (1928) pp. 371–381.

2. For provisions authorizing defenses to be made in the answer or reply see *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 25, r.r. 1–4; 1 Miss.Code Ann. (1930) §§378, 379. Compare [former] Equity Rule 29 (Defenses—How Presented); U.S.C., Title 28, [former] §45 (District Courts; practice and procedure in certain cases under the interstate commerce laws). U.S.C., Title 28, [former] §45, substantially continued by this rule, provides: "No replication need be filed to the answer, and objections to the sufficiency of the petition or answer as not setting forth a cause of action or defense must be taken at the final hearing or by motion to dismiss the petition based on said grounds, which motion may be made at any time before answer is filed." Compare Calif.Code Civ.Proc. (Deering, 1937) §433; 4 Nev.Comp.Laws (Hillyer, 1929) §8600. For provisions that the defendant may demur and answer at the same time, see Calif.Code Civ.Proc. (Deering, 1937) §431; 4 Nev.Comp.Laws (Hillyer, 1929) §8598.

3. [Former] Equity Rule 29 (Defenses—How Presented) abolished demurrers and provided that defenses in point of law arising on the face of the bill should be made by motion to dismiss or in the answer, with further provision that every such point of law going to the whole or material part of the cause or causes stated might be called up and disposed of before final hearing "at the discretion of the court." Likewise many state practices have abolished the demurrer, or retain it only to attack substantial and not formal defects. See 6 Tenn.Code Ann. (Williams, 1934) §8784; Ala.Code Ann. (Michie, 1928) §9479; 2 Mass.Gen.Laws (Ter.Ed., 1932) ch. 231, §§15–18; Kansas Gen.Stat.Ann. (1935) §§60–705, 60–706.

*Note to Subdivision (c)*. Compare [former] Equity Rule 33 (Testing Sufficiency of Defense); N.Y.R.C.P. (1937) Rules 111 and 112.

*Note to Subdivisions (e)* and (f). Compare [former] Equity Rules 20 (Further and Particular Statement in Pleading May Be Required) and 21 (Scandal and Impertinence); *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 19, r.r. 7, 7a, 7b, 8; 4 Mont.Rev.Codes Ann. (1935) §§9166, 9167; N.Y.C.P.A. (1937) §247; N.Y.R.C.P. (1937) Rules 103, 115, 116, 117; Wyo.Rev.Stat.Ann. (Courtright, 1931) §§89–1033, 89–1034.

*Note to Subdivision (g)*. Compare Rules of the District Court of the United States for the District of Columbia (1937), Equity Rule 11; N.M. Rules of Pleading, Practice and Procedure, 38 N.M.Rep. vii [105–408] (1934); Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI (e) and (f).

*Note to Subdivision (h)*. Compare Calif.Code Civ.Proc. (Deering, 1937) §434; 2 Minn.Stat. (Mason, 1927) §9252; N.Y.C.P.A. (1937) §§278 and 279; Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI (e). This rule continues U.S.C., Title 28, §80 [now 1359, 1447, 1919] (Dismissal or remand) (of action over which district court lacks jurisdiction), while U.S.C., Title 28, §399 [now 1653] (Amendments to show diverse citizenship) is continued by Rule 15.

Notes of Advisory Committee on Rules—1946 Amendment

*Subdivision (a)*. Various minor alterations in language have been made to improve the statement of the rule. All references to bills of particulars have been stricken in accordance with changes made in subdivision (e).

*Subdivision (b)*. The addition of defense (7), “failure to join an indispensable party”, cures an omission in the rules, which are silent as to the mode of raising such failure. See Commentary, *Manner of Raising Objection of Non-Joinder of Indispensable Party* (1940) 2 Fed.Rules Serv. 658 and (1942) 5 Fed.Rules Serv. 820. In one case, *United States v. Metropolitan Life Ins. Co*. (E.D.Pa. 1941) 36 F.Supp. 399, the failure to join an indispensable party was raised under Rule 12(c).

Rule 12(b)(6), permitting a motion to dismiss failure of the complaint to state a claim on which relief can be granted, is substantially the same as the old demurrer for failure of a pleading to state a cause of action. Some courts have held that as the rule by its terms refers to statements in the complaint, extraneous matter on affidavits, depositions or otherwise, may not be introduced in support of the motion, or to resist it. On the other hand, in many cases the district courts have permitted the introduction of such material.

When these cases have reached circuit courts of appeals in situations where the extraneous material so received shows that there is no genuine issue as to any material question of fact and that on the undisputed facts as disclosed by the affidavits or depositions, one party or the other is entitled to judgment as a matter of law, the circuit courts, properly enough, have been reluctant to dispose of the case merely on the face of the pleading, and in the interest of prompt disposition of the action have made a final disposition of it. In dealing with such situations the Second Circuit has made the sound suggestion that whatever its label or original basis, the motion may be treated as a motion for summary judgment and disposed of as such. *Samara v. United States* (C.C.A.2d, 1942) 129 F.(2d) 594, cert. den. (1942) 317 U.S. 686; *Boro Hall Corp. v. General Motors Corp*. (C.C.A.2d, 1942) 124 F.(2d) 822, cert. den. (1943) 317 U.S. 695. See also *Kithcart v. Metropolitan Life Ins. Co*. (C.C.A.8th, 1945) 150 F.(2d) 997, aff'g 62 F.Supp. 93.

It has also been suggested that this practice could be justified on the ground that the federal rules permit "speaking" motions. The Committee entertains the view that on motion under Rule 12(b)(6) to dismiss for failure of the complaint to state a good claim, the trial court should have authority to permit the introduction of extraneous matter, such as may be offered on a motion for summary judgment, and if it does not exclude such matter the motion should then be treated as a motion for summary judgment and disposed of in the manner and on the conditions stated in Rule 56 relating to summary judgments, and, of course, in such a situation, when the case reaches the circuit court of appeals, that court should treat the motion in the same way. The Committee believes that such practice, however, should be tied to the summary judgment rule. The term "speaking motion" is not mentioned in the rules, and if there is such a thing its limitations are undefined. Where extraneous matter is received, by tying further proceedings to the summary judgment rule the courts have a definite basis in the rules for disposing of the motion.

The Committee emphasizes particularly the fact that the summary judgment rule does not permit a case to be disposed of by judgment on the merits on affidavits, which disclose a conflict on a material issue of fact, and unless this practice is tied to the summary judgment rule, the extent to which a court, on the introduction of such extraneous matter, may resolve questions of fact on conflicting proof would be left uncertain.

The decisions dealing with this general situation may be generally grouped as follows: (1) cases dealing with the use of affidavits and other extraneous material on motions; (2) cases reversing judgments to prevent final determination on mere pleading allegations alone.

Under group (1) are: *Boro Hall Corp. v. General Motors Corp*. (C.C.A.2d, 1942) 124 F.(2d) 822, cert. den. (1943) 317 U.S. 695; *Gallup v. Caldwell* (C.C.A.3d, 1941) 120 F.(2d) 90; *Central Mexico Light & Power Co. v. Munch* (C.C.A.2d, 1940) 116 F.(2d) 85; *National Labor Relations Board v. Montgomery Ward & Co*. (App.D.C. 1944) 144 F.(2d) 528, cert. den. (1944) 65 S.Ct. 134; *Urquhart v. American-La France Foamite Corp*. (App.D.C. 1944) 144 F.(2d) 542; *Samara v. United States* (C.C.A.2d, 1942) 129 F.(2d) 594; *Cohen v. American Window Glass Co*. (C.C.A.2d, 1942) 126 F.(2d) 111; *Sperry Products Inc. v. Association of American Railroads* (C.C.A.2d, 1942) 132 F.(2d) 408; *Joint Council Dining Car Employees Local 370 v. Delaware, Lackawanna and Western R. Co*. (C.C.A.2d, 1946) 157 F.(2d) 417; *Weeks v. Bareco Oil Co*. (C.C.A.7th, 1941) 125 F.(2d) 84; *Carroll v. Morrison Hotel Corp*. (C.C.A.7th, 1945) 149 F.(2d) 404; *Victory v. Manning* (C.C.A.3rd, 1942) 128 F.(2d) 415; *Locals No. 1470, No. 1469, and 1512 of International Longshoremen's Association v. Southern Pacific Co*. (C.C.A.5th, 1942) 131 F.(2d) 605; *Lucking v. Delano* (C.C.A.6th, 1942) 129 F.(2d) 283; *San Francisco Lodge No. 68 of International Association of Machinists v. Forrestal* (N.D.Cal. 1944) 58 F.Supp. 466; *Benson v. Export Equipment Corp*. (N. Mex. 1945) 164 P.2d 380 (construing New Mexico rule identical with Rule 12(b)(6); *F. E. Myers & Bros. Co. v. Gould Pumps, Inc*. (W.D.N.Y. 1946) 9 Fed.Rules Serv. 12b.33, Case 2, 5 F.R.D. 132. Cf. *Kohler v. Jacobs* (C.C.A.5th, 1943) 138 F.(2d) 440; *Cohen v. United States* (C.C.A.8th, 1942) 129 F.(2d) 733.

Under group (2) are: *Sparks v. England* (C.C.A.8th, 1940) 113 F.(2d) 579; *Continental Collieries, Inc. v. Shober* (C.C.A.3d, 1942) 130 F.(2d) 631; *Downey v. Palmer* (C.C.A.2d 1940) 114 F.(2d) 116; *DeLoach v. Crowley's Inc*. (C.C.A.5th, 1942) 128 F.(2d) 378; *Leimer v. State Mutual Life Assurance Co. of Worcester, Mass*. (C.C.A.8th, 1940) 108 F.(2d) 302; *Rossiter v. Vogel* (C.C.A.2d, 1943) 134 F.(2d) 908, compare s. c. (C.C.A.2d, 1945) 148 F.(2d) 292; *Karl Kiefer Machine Co. v. United States Bottlers Machinery Co*. (C.C.A.7th, 1940) 113 F.(2d) 356; *Chicago Metallic Mfg. Co. v. Edward Katzinger Co*. (C.C.A.7th, 1941) 123 F.(2d) 518; *Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co. of America, Inc*. (C.C.A.8th, 1942) 131 F.(2d) 419; *Publicity Bldg. Realty Corp. v. Hannegan* (C.C.A.8th, 1943) 139 F.(2d) 583; *Dioguardi v. Durning* (C.C.A.2d, 1944) 139 F.(2d) 774; *Package Closure Corp. v. Sealright Co., Inc*. (C.C.A.2d, 1944) 141 F.(2d) 972; *Tahir Erk v. Glenn L. Martin Co*. (C.C.A.4th, 1941) 116 F.(2d) 865; *Bell v. Preferred Life Assurance Society of Montgomery, Ala*. (1943) 320 U.S. 238.

The addition at the end of subdivision (b) makes it clear that on a motion under Rule 12(b)(6) extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. It will also be observed that if a motion

under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment. In this manner and to this extent the amendment regularizes the practice above described. As the courts are already dealing with cases in this way, the effect of this amendment is really only to define the practice carefully and apply the requirements of the summary judgment rule in the disposition of the motion.

*Subdivision (c).* The sentence appended to subdivision (c) performs the same function and is grounded on the same reasons as the corresponding sentence added in subdivision (b).

*Subdivision (d).* The change here was made necessary because of the addition of defense (7) in subdivision (b).

*Subdivision (e).* References in this subdivision to a bill of particulars have been deleted, and the motion provided for is confined to one for a more definite statement, to be obtained only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question. With respect to preparations for trial, the party is properly relegated to the various methods of examination and discovery provided in the rules for that purpose. *Slusher v. Jones* (E.D.Ky. 1943) 7 Fed.Rules Serv. 12e.231, Case 5, 3 F.R.D. 168; *Best Foods, Inc. v. General Mills, Inc.* (D.Del. 1943) 7 Fed.Rules Serv. 12e.231, Case 7, 3 F.R.D. 275; *Braden v. Callaway* (E.D.Tenn. 1943) 8 Fed.Rules Serv. 12e.231, Case 1 (". . . most courts . . . conclude that the definiteness required is only such as will be sufficient for the party to prepare responsive pleadings"). Accordingly, the reference to the 20 day time limit has also been eliminated, since the purpose of this present provision is to state a time period where the motion for a bill is made for the purpose of preparing for trial.

Rule 12(e) as originally drawn has been the subject of more judicial rulings than any other part of the rules, and has been much criticized by commentators, judges and members of the bar. See general discussion and cases cited in 1 *Moore's Federal Practice* (1938), Cum.Supplement §12.07, under "Page 657"; also, Holtzoff, *New Federal Procedure and the Courts* (1940) 35–41. And compare vote of Second Circuit Conference of Circuit and District Judges (June 1940) recommending the abolition of the bill of particulars; *Sun Valley Mfg. Co. v. Mylish* (E.D.Pa. 1944) 8 Fed.Rules Serv. 12e.231, Case 6 ("Our experience . . . has demonstrated not only that 'the office of the bill of particulars is fast becoming obsolete' . . . but that in view of the adequate discovery procedure available under the Rules, motions for bills of particulars should be abolished altogether."); *Walling v. American Steamship Co.* (W.D.N.Y. 1945) 4 F.R.D. 355, 8 Fed.Rules Serv. 12e.244, Case 8

("... the adoption of the rule was ill advised. It has led to confusion, duplication and delay.") The tendency of some courts freely to grant extended bills of particulars has served to neutralize any helpful benefits derived from Rule 8, and has overlooked the intended use of the rules on depositions and discovery. The words "or to prepare for trial"—eliminated by the proposed amendment—have sometimes been seized upon as grounds for compulsory statement in the opposing pleading of all the details which the movant would have to meet at the trial. On the other hand, many courts have in effect read these words out of the rule. See *Walling v. Alabama Pipe Co.* (W.D.Mo. 1942) 6 Fed.Rules Serv. 12e.244, Case 7; *Fleming v. Mason & Dixon Lines, Inc.* (E.D.Tenn. 1941) 42 F.Supp. 230; *Kellogg Co. v. National Biscuit Co.* (D.N.J. 1941) 38 F.Supp. 643; *Brown v. H. L. Green Co.* (S.D.N.Y. 1943) 7 Fed.Rules Serv. 12e.231, Case 6; *Pedersen v. Standard Accident Ins. Co.* (W.D.Mo. 1945) 8 Fed.Rules Serv. 12e.231, Case 8; *Bowles v. Ohse* (D.Neb. 1945) 4 F.R.D. 403, 9 Fed.Rules Serv. 12e.231, Case 1; *Klages v. Cohen* (E.D.N.Y. 1945) 9 Fed.Rules Serv. 8a.25, Case 4; *Bowles v. Lawrence* (D.Mass. 1945) 8 Fed.Rules Serv. 12e.231, Case 19; *McKinney Tool & Mfg. Co. v. Hoyt* (N.D.Ohio 1945) 9 Fed.Rules Serv. 12e.235, Case 1; *Bowles v. Jack* (D.Minn. 1945) 5 F.R.D. 1, 9 Fed.Rules Serv. 12e.244, Case 9. And it has been urged from the bench that the phrase be stricken. *Poole v. White* (N.D.W.Va. 1941). 5 Fed.Rules Serv. 12e.231, Case 4, 2 F.R.D. 40. See also *Bowles v. Gabel* (W.D.Mo. 1946) 9 Fed.Rules Serv. 12e.244, Case 10 ("The courts have never favored that portion of the rules which undertook to justify a motion of this kind for the purpose of aiding counsel in preparing his case for trial.").

*Subdivision (f).* This amendment affords a specific method of raising the insufficiency of a defense, a matter which has troubled some courts, although attack has been permitted in one way or another. See *Dysart v. Remington-Rand, Inc.* (D.Conn. 1939) 31 F.Supp. 296; *Eastman Kodak Co. v. McAuley* (S.D.N.Y. 1941) 4 Fed.Rules Serv. 12f.21, Case 8, 2 F.R.D. 21; *Schenley Distillers Corp. v. Renken* (E.D.S.C. 1940) 34 F.Supp. 678; *Yale Transport Corp. v. Yellow Truck & Coach Mfg. Co.* (S.D.N.Y. 1944) 3 F.R.D. 440; *United States v. Turner Milk Co.* (N.D.Ill. 1941) 4 Fed.Rules Serv. 12b.51, Case 3, 1 F.R.D. 643; *Teiger v. Stephan Oderwald, Inc.* (S.D.N.Y. 1940) 31 F.Supp. 626; *Teplitsky v. Pennsylvania R. Co.* (N.D.Ill. 1941) 38 F.Supp. 535; *Gallagher v. Carroll* (E.D.N.Y. 1939) 27 F.Supp. 568; *United States v. Palmer* (S.D.N.Y. 1939) 28 F.Supp. 936. And see *Indemnity Ins. Co. of North America v. Pan American Airways, Inc.* (S.D.N.Y. 1944) 58 F.Supp. 338; Commentary, *Modes of Attacking Insufficient Defenses in the Answer* (1939) 1 Fed.Rules Serv. 669 (1940) 2 Fed.Rules Serv. 640.

*Subdivision (g).* The change in title conforms with the companion provision in subdivision (h).

The alteration of the "except" clause requires that other than provided in subdivision (h) a party who resorts to a motion to raise defenses specified in the rule, must include in one motion all that are then available to him. Under the original rule defenses which could be raised by motion were divided into two groups which could be the subjects of two successive motions.

*Subdivision (h)*. The addition of the phrase relating to indispensable parties is one of necessity.

Notes of Advisory Committee on Rules—1963 Amendment

This amendment conforms to the amendment of Rule 4(e). See also the Advisory Committee's Note to amended Rule 4(b).

Notes of Advisory Committee on Rules—1966 Amendment

*Subdivision (b)(7)*. The terminology of this subdivision is changed to accord with the amendment of Rule 19. See the Advisory Committee's Note to Rule 19, as amended, especially the third paragraph therein before the caption "Subdivision (c)."

*Subdivision (g)*. Subdivision (g) has forbidden a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein. Thus if the defendant moves before answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion. Amended subdivision (g) is to the same effect. This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case. For exceptions to the requirement of consolidation, see the last clause of subdivision (g), referring to new subdivision (h)(2).

*Subdivision (h)*. The question has arisen whether an omitted defense which cannot be made the basis of a second motion may nevertheless be pleaded in the answer. Subdivision (h) called for waiver of "* * * defenses and objections which he [defendant] does not present * * * by motion * * * or, if he has made no motion, in his answer * * *." If the clause "if he has made no motion," was read literally, it seemed that the omitted defense was waived and could not be pleaded in the answer. On the other hand, the clause might be read as adding nothing of substance to the preceding words; in that event it appeared that a defense was not waived by reason of being omitted from the motion and might be set up in the answer. The decisions were divided. Favoring waiver, see *Keefe v.*

*Derounian*, 6 F.R.D. 11 (N.D.Ill. 1946); *Elbinger v. Precision Metal Workers Corp.*, 18 F.R.D. 467 (E.D.Wis. 1956); see also *Rensing v. Turner Aviation Corp.*, 166 F.Supp. 790 (N.D.Ill. 1958); *P. Beiersdorf & Co. v. Duke Laboratories, Inc.*, 10 F.R.D. 282 (S.D.N.Y. 1950); *Neset v. Christensen*, 92 F.Supp. 78 (E.D.N.Y. 1950). Opposing waiver, see *Phillips v. Baker*, 121 F.2d 752 (9th Cir. 1941); *Crum v. Graham*, 32 F.R.D. 173 (D.Mont. 1963) (regretfully following the Phillips case); see also *Birnbaum v. Birrell*, 9 F.R.D. 72 (S.D.N.Y. 1948); *Johnson v. Joseph Schlitz Brewing Co.*, 33 F.Supp. 176 (E.D.Tenn. 1940); cf. *Carter v. American Bus Lines, Inc.*, 22 F.R.D. 323 (D.Neb. 1958).

Amended subdivision (h)(1)(A) eliminates the ambiguity and states that certain specified defenses which were available to a party when he made a preanswer motion, but which he omitted from the motion, are waived. The specified defenses are lack of jurisdiction over the person, improper venue, insufficiency of process, and insufficiency of service of process (see Rule 12(b)(2)–(5)). A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has and thus allow the court to do a reasonably complete job. The waiver reinforces the policy of subdivision (g) forbidding successive motions.

By amended subdivision (h)(1)(B), the specified defenses, even if not waived by the operation of (A), are waived by the failure to raise them by a motion under Rule 12 or in the responsive pleading or any amendment thereof to which the party is entitled as a matter of course. The specified defenses are of such a character that they should not be delayed and brought up for the first time by means of an application to the court to amend the responsive pleading.

Since the language of the subdivisions is made clear, the party is put on fair notice of the effect of his actions and omissions and can guard himself against unintended waiver. It is to be noted that while the defenses specified in subdivision (h)(1) are subject to waiver as there provided, the more substantial defenses of failure to state a claim upon which relief can be granted, failure to join a party indispensable under Rule 19, and failure to state a legal defense to a claim (see Rule 12(b)(6), (7), (f)), as well as the defense of lack of jurisdiction over the subject matter (see Rule 12(b)(1)), are expressly preserved against waiver by amended subdivision (h)(2) and (3).

Notes of Advisory Committee on Rules—1987 Amendment

The amendments are technical. No substantive change is intended.

Notes of Advisory Committee on Rules—1993 Amendment

Subdivision (a) is divided into paragraphs for greater clarity, and paragraph (1)(B) is added to reflect amendments to Rule 4. Consistent with Rule 4(d)(3), a defendant that timely waives service is allowed 60 days from the date the request was mailed in which to respond to the complaint, with an additional 30 days afforded if the request was sent out of the country. Service is timely waived if the waiver is returned within the time specified in the request (30 days after the request was mailed, or 60 days if mailed out of the country) and before being formally served with process. Sometimes a plaintiff may attempt to serve a defendant with process while also sending the defendant a request for waiver of service; if the defendant executes the waiver of service within the time specified and before being served with process, it should have the longer time to respond afforded by waiving service.

The date of sending the request is to be inserted by the plaintiff on the face of the request for waiver and on the waiver itself. This date is used to measure the return day for the waiver form, so that the plaintiff can know on a day certain whether formal service of process will be necessary; it is also a useful date to measure the time for answer when service is waived. The defendant who returns the waiver is given additional time for answer in order to assure that it loses nothing by waiving service of process.

*GAP Report.* No changes are recommended for Rule 12 as published.

Committee Notes on Rules—2007 Amendment

The language of Rule 12 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 12(a)(4)(A) referred to an order that postpones disposition of a motion "until the trial on the merits." Rule 12(a)(4) now refers to postponing disposition "until trial." The new expression avoids the ambiguity that inheres in "trial on the merits," which may become confusing when there is a separate trial of a single issue or another event different from a single all-encompassing trial.

*Changes Made After Publication and Comment*. See Note to Rule 1, supra.

Committee Notes on Rules—2009 Amendment

The times set in the former rule at 10 or 20 days have been revised to 14 or 21 days. See the Note to Rule 6.

Committee Notes on Rules—2024 Amendment

Rule 12 is amended to make it clear that a federal statute that specifies another time supersedes the times to
serve a responsive pleading set by paragraphs (a)(2) and (3). Paragraph (a)(1) incorporates this provision, but the structure of subdivision (a) does not seem to extend it to paragraphs (2) and (3). There is no reason to supersede an inconsistent statute by any part of Rule 12(a). The amended structure recognizes the priority of any statute for all of paragraphs (1), (2), and (3).

PROPOSED ORDER

Upon consideration of Defendant Trustees of Boston College's Motion to Enjoin Plaintiff

from Filing Certain Papers Without Leave of Court, and the memorandum and exhibits submitted in support, the Motion is ALLOWED. It is hereby ORDERED that:

I might add to that Defendant Boston College does not like surprises from plaintiff Avenir Agaj therefore request the following:

1. Plaintiff Avenir Agaj shall obtain leave of court before filing any paper other than

(a) an opposition to a motion filed in compliance with Local Rule 7.1(b)(2); and (b) a response to an order of this Court. A paper for which Local Rule 7.1(b)(3) requires leave is not exempt from this requirement.

Answer

**Violation of Orders or Rules:** The defendant Boston College repeatedly ignored explicit court orders, discovery rules, or procedural requirements.

Namely during discovery and has failed to provide copy of the filing ,answers under oath and has engaged in Exparte communication with the court and my former attorney after his discharge and now seeks a sanction for violation of the rules???

Boston College should have taken my deposition!!!!!

2. A request for leave under paragraph 1 of this Order shall be made by motion and attach the proposed paper. The motion shall state in clear terms why the proposed paper is (a) authorized by the Federal Rules of Civil Procedure and the Local Rules of this court; (b) directly relevant to a claim remaining in this action or to a motion presently pending before the Court;and (c) not duplicative of information already presented to the Court.

Answer.

I plaintiff Avenir Agaj am the one that has always followed the rules in contrary this court and the defendant has not.

3. The Court will review the motion for leave and proposed paper. If the Court determines that the proposed paper satisfies each of the requirements in paragraph 2 and complies with paragraphs 4 through 6 of this Order, the Court will allow the motion and the Case 1:24-cv-10884-JEK Document 187-1 Filed 10/19/26 Page 1 of 22 paper will be docketed. If the Court determines that the proposed paper does not, the motion will be denied and the paper will not be docketed.

Answer .

Why is the defendant Boston College asking the court to violate my first amendment free speech?

4. No paper filed by Plaintiff, whether filed with leave or without, shall contain an accusation that an identified person has engaged in criminal conduct, fraud, bribery, perjury, forgery, or judicial misconduct, unless the paper is accompanied by a statement identifying the specific admissible factual evidence supporting each accusation.

Answer.

So the defendant Boston College wants to engage on criminal conduct, steal, corrupt ,lie,falsify, and pull the strings of the friend on high places and me the victim is asked to hush even though i can prove this acts with solid evidence and are related to directly to this case.

5. No paper filed by Plaintiff, whether filed with leave or without, shall seek relief

on a claim that has been dismissed in this action or in any other proceeding, or reassert a

contention that this Court or the First Circuit has already rejected, unless the paper identifies an intervening change in fact or law.

Answer.

6. No paper filed by Plaintiff, whether filed with leave or without, shall contain matter that is immaterial, impertinent, or scandalous.

Answer.

A defendant cannot get sanctions just by complaining that they don't like a suit; they must prove that the plaintiff's filing violates a specific legal standard, such as:

- **Frivolous Litigation:** The claims have no factual or legal foundation, or the plaintiff knew (or should have known) they lacked merit.
- **Improper Purpose:** The filing was submitted specifically to harass the defendant, cause unnecessary delay, or needlessly drive up litigation costs (governed by rules like **Federal Rule of Civil Procedure 11** or state equivalents).
- **Violation of Orders or Rules:** The plaintiff repeatedly ignored explicit court orders, discovery rules, or procedural requirements.

7. Any paper filed in violation of paragraphs 4 through 6 of this Order may be stricken in whole or in part.

Answer.

You the defendant at Boston College, want to control my filing.

That is not how this works. I have the right to a due process.

8. This Order shall not apply to the entry of appearance or any filing of an attorney who enters an appearance on behalf of Plaintiff.

Answer.

In part grand part thanks to the defendant Boston College actions the damage is done

NO ATTORNEY WILL TAKE MY CASE on my behalf as plaintiff. Unless the court is willing to appoint me one ,i have done my research no results so far.

9. This Order shall remain in effect until the Court has resolved the summary of judgment motion pending in this action. Upon motion of either party, or on its own motion, the Court may extend, modify, or vacate this Order. Nothing in this Order restricts Plaintiff's right to appeal from any order or judgment of this Court.

Answer .

I disagree with this request because the defendant at Boston College contradicts it self and ask for an extension to the order after approval which was not mention during our communications.

Now in conclusion i will ask the court to **GRANT PLAINTIFFS MOTION TO STRIKE IN OPPOSITION TO DEFENDANT TRUSTEES OF BOSTON COLLEGE'S MOTION TO ENJOIN**

**PLAINTIFF FROM FILING CERTAIN PAPERS WITHOUT LEAVE OF COURT .AND MOTION TO STRIKE DEFENDANTS BOSTON COLLEGE PROPOSED ORDER.**

---

**PURSUANT RULE 12 (f) FEDERAL RULES OF CIVIL PROCEDURE .**

ALSO REMIND THE HONORABLE JUDGE JULIA E.KOBICK OF HER OATH OF OFFICE

GIVEN TO THE SENATE AND THE AMERICAN PEOPLE DURING HER CONFIRMATION HEARING REGARDING PEOPLE RIGHTs UNDER US CONSTITUTION .

Senator Chuck Grassley, Ranking Member

Questions for the Record

Ms. Julia Eleanor Kobick

Nominee to be United States District Judge, District of Massachusetts

12. What is implicit bias? Response: I generally understand the concept of implicit bias to refer to a form of bias or cognitive heuristic that occurs unconsciously and automatically, and that can affect judgments, decisions, and behaviors.
13. Is the federal judiciary affected by implicit bias? Response: I understand the concept of implicit bias to refer to biases or judgments that operate below the level of an individual's conscious awareness. The question whether an institution, like the federal judiciary, is affected by implicit bias is a systemic question most appropriate for policy makers to consider. If confirmed, I would work to ensure that my decisions are free from bias, including by diligently reviewing the record, carefully considering arguments, writing thoroughly reasoned decisions, engaging with colleagues and parties with the spirit of open-mindedness, and adhering to procedural requirements and precedent. And I would strive to treat all who come into my courtroom equally and fairly, as individuals.
14. Do you have any implicit biases? If so, what are they? Response: I understand the research on implicit bias to demonstrate that all people, myself included, have implicit biases that operate below the level of conscious awareness. If confirmed, I would work to ensure that my decisions are free from bias, including by diligently reviewing the record, carefully considering arguments, writing thoroughly reasoned decisions, engaging with colleagues and parties with the spirit of open-mindedness, and adhering to procedural requirements and precedent. And I would strive to treat all who come into my courtroom equally and fairly, as individuals.

15. How do you distinguish between "attacks" on a sitting judge and mere criticism of an opinion he or she has issued? Response: The First Amendment protects the right to criticize public officials. See New York Times v. Sullivan, 376 U.S. 254, 269-71 (1964). The speech rights safeguarded by the First Amendment reflect America's "national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." Id. at 270. At the same time, the Supreme Court has recognized that "the unhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional democracy," and that "it is of the utmost importance that the administration of justice be absolutely fair and orderly." Cox v. Louisiana, 379 U.S. 559, 562 (1965).

25.How do you understand the difference, if any, between freedom of religion and freedom of worship? Response: I do not understand the Supreme Court to have drawn a distinction between the freedom of religion and the freedom of worship for purposes of the Free Exercise Clause of the First Amendment. The Supreme Court has described the right protected by the Free Exercise Clause as both the "free exercise of religion" and the "freedom of worship." See, e.g., Carson v. Makin, 142 S. Ct. 1987, 1996 (2022) ("The Free Exercise Clause of the First Amendment protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'" (quoting Lyng v. Northwest Indian Cemetery Protective Assn., 485 U.S. 439, 450 (1988))); Chaplinsky v. New Hampshire, 315 U.S. 568, 571 (1942) (explaining that the "freedom of worship" is a fundamental right made applicable to the States by the Fourteenth Amendment (citing Cantwell v. Connecticut, 310 U.S. 296, 303 (1940))). Government regulations that burden religious exercise and are not "neutral and generally applicable" trigger strict scrutiny under the Free Exercise Clause. Tandon v. Newsom, 141 S. Ct. 1294, 1296 (2021) (per curiam).

27. Do you agree that the First Amendment is more often a tool of the powerful than the oppressed? Response: If confirmed, my personal views regarding the First Amendment would play no role in my judicial decision-making. If an issue concerning the First Amendment were to arise, I would be bound by, and would adhere to, the relevant Supreme Court and First Circuit precedent.

SENATOR TED CRUZ

U.S. Senate Committee on the Judiciary

Questions for the Record for Julia Kobick, nominated to be United States District Judge for the District of Massachusetts

2. Are there any unenumerated rights in the Constitution, as yet unarticulated by the Supreme Court that you believe can or should be identified in the future? Response: Should any case come before me concerning unenumerated rights in the

Constitution, either a right that has been identified by the Supreme Court or one that a party contends should be identified, I would follow the test set forth in Washington v. Glucksberg, 521 U.S. 702 (1997). Under that test, "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' id. at 503 (plurality opinion); Snyder v. Massachusetts, 291 U.S. 97, 105 (1934) ('so rooted in the traditions and conscience of our people as to be ranked as fundamental'), and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed,' Palko v. Connecticut, 302 U.S. 319, 325, 326 (1937)." Washington, 521 U.S. at 720-21.

14. Is it ever permissible for the government to discriminate against religious organizations or religious people? Response: Please see my response to Question 13.

15. In Roman Catholic Diocese of Brooklyn v. Cuomo, the Roman Catholic Diocese of Brooklyn and two Orthodox Jewish synagogues sued to block enforcement of an executive order restricting capacity at worship services within certain zones, while certain secular businesses were permitted to remain open and subjected to different restrictions in those same zones. The religious organizations claimed that this order violated their First Amendment right to free exercise of religion. Explain the U.S. Supreme Court's holding on whether the religious entity-applicants were entitled to a preliminary injunction. Response: The Supreme Court held that the religious-entity applicants in Roman Catholic Diocese were entitled to a preliminary injunction of the executive order pending appeal and disposition of any petition for a writ of certiorari, because they established a likelihood of success on the merits on their Free Exercise claim, they demonstrated that they would suffer irreparable harm absent injunctive relief, and they demonstrated that the public interest would not be harmed if injunctive relief were awarded. Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020) (per curiam). With respect to the likelihood of success on the merits, the Court first concluded that the challenged capacity restrictions were likely not neutral because they "single[d] out houses of worship for especially harsh treatment." Id. at

And because the restrictions were not neutral and of general applicability, they were subject to strict scrutiny. Id. at 67. The Court held that the capacity restrictions were not likely to survive that rigorous standard of review because there were less restrictive alternative policies available that could have prevented the spread of COVID-19. Id.

16. Please explain the U.S. Supreme Court's holding and rationale in Tandon v. Newsom. Response: In Tandon v. Newsom, the Supreme Court granted the application for injunctive relief pending appeal or disposition of any petition for a writ of certiorari. 141 S. Ct. 1294 (2021) (per curiam). The Court enjoined state restrictions imposed on private gatherings during the COVID-19 pandemic,

concluding that the restrictions were not neutral and generally applicable because they treated comparable secular activity more favorably than at-home religious gatherings, and therefore triggered strict scrutiny under the Free Exercise Clause. Id. at 1296-97. The Court held that the applicants were likely to succeed on the merits of their Free Exercise claim and that the other equitable factors warranted an injunction pending appeal. Id. at 1297.

17. Do Americans have the right to their religious beliefs outside the walls of their houses of worship and homes? Response: Yes.
18. Explain your understanding of the U.S. Supreme Court's holding in Masterpiece Cakeshop v. Colorado Civil Rights Commission. Response: In Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission, the Supreme Court considered whether the Colorado Civil Rights Commission's application of the Colorado Anti-Discrimination Act to a bakery comported with the Free Exercise Clause of the First Amendment. 138 S. Ct. 1719 (2018). The Colorado Civil Rights Commission had determined that the refusal of the petitioner, a bakery business, to provide wedding cakes to same-sex couples on the basis of religious beliefs violated the Act, which prohibits discrimination in places of public accommodation on the basis of protected characteristics, including sexual orientation. Id. at 1726. The Supreme Court held that the Colorado Civil Rights Commission's consideration of the case exhibited hostility to religion and therefore violated the state's duty under the Free Exercise Clause "not to base laws or regulations on hostility to a religion or religious viewpoint." Id. at 1731
19. Under existing doctrine, are an individual's religious beliefs protected if they are contrary to the teaching of the faith tradition to which they belong? Response: The Supreme Court has explained that "'religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.'" Fulton v. City of Philadelphia, 141 S. Ct. 1868, 1876 (2021) (quoting Thomas v. Review Bd. of Ind. Employment Security Div., 450 U.S. 707, 714 (1981)). So long as a person's religious beliefs are sincere, they are protected, even if those beliefs are not based on teachings of the faith tradition to which they belong. See Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 686 (2014); Frazee v. Illinois Dep't of Employment Security, 489 U.S. 829, 834 (1989)

44 a. Do American citizens lose protection of their constitutional rights during a pandemic? Response: No.

b. What constitutional rights may the government violate or implicate during a Pandemic?

Response: In accordance with the Code of Conduct for United States Judges, it would not be appropriate for me, as a judicial nominee, to comment in the abstract on this

question. Should any case come before me concerning the lawfulness of pandemic related policies, I would impartially and faithfully apply all relevant Supreme Court and First Circuit precedent, including the Supreme Court's decisions in Tandon v. Newsom, 141 S. Ct. 1294 (2021) (per curiam), and Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020) (per curiam), and the First Circuit's decision in Bayley's Campground, Inc. v. Mills, 985 F.3d 153 (1st Cir. 2021). In any case concerning Second Amendment rights, I would likewise impartially and faithfully apply all relevant Supreme Court and First Circuit precedent, including District of Columbia v. Heller, 554 U.S. 570 (2008), McDonald v. City of Chicago, 561 U.S. 742 (2010), Caetano v. Massachusetts, 577 U.S. 411 (2016), and New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022).

Senator Ben Sasse
Questions for the Record for Julia E. Kobick
U.S. Senate Committee on the Judiciary
Hearing: "Nominations"
November 30, 2022

1. Since becoming a legal adult, have you participated in any events at which you or other participants called into question the legitimacy of the United States Constitution?

Response: No.

2. How would you describe your judicial philosophy?

Response: The role of an Article III judge is to fairly and impartially resolve the case or controversy before her. I would approach each case cognizant of the limits on judicial power, with an open mind, and with humility. In every case, I would consult the relevant precedent from the Supreme Court and First Circuit. I would carefully review the factual record, the parties' written submissions, and the parties' arguments. I would engage with the parties respectfully and work diligently to determine how the law applies to the facts of the case. In writing decisions, I would strive to explain my reasoning clearly, so that the parties and the public understand why the law requires a particular outcome.

3. Would you describe yourself as an originalist?

Response: I would not characterize my approach to constitutional interpretation with any particular label. Should a matter of constitutional interpretation come before me, I would research and apply relevant Supreme Court and First Circuit precedent. For some constitutional provisions—for example, the Establishment Clause of the First Amendment, the Second Amendment, and the Confrontation Clause of the Sixth Amendment—the Supreme Court has instructed courts to examine the original public meaning of the provision. See, e.g., Kennedy v. Bremerton School Dist., 142 S. Ct. 2407,

2428 (2022) (Establishment Clause); New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2127 (2022) (Second Amendment); Crawford v. Washington, 541 U.S. 36, 43 (2004) (Confrontation Clause). I would adhere to the test and methodology prescribed by the Supreme Court and First Circuit for each constitutional provision.

Senator Josh Hawley
Questions for the Record
Julia Kobick
Nominee, District of Massachusetts
27.What in your view are the relative advantages and disadvantages of awarding damages versus injunctive relief? Response: The question whether damages or injunctive relief is appropriate in any particular case depends on the facts of the case and the relief requested in the complaint. In general, damages are intended to compensate a party for past harm, while injunctive relief is intended to prevent ongoing or future harm.

28. What is your understanding of the Supreme Court's precedents on substantive due process? Response: The Supreme Court has construed the substantive component of the Due Process Clauses of the Fifth and Fourteenth Amendments to "provid[e] heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Those fundamental rights must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Id. at 720-21 (internal quotation marks and citations omitted). Among those fundamental rights protected by the due process clause are the "rights to marry, to have children, to direct the education of one's children, to marital privacy, to use contraception, [and] to bodily integrity." Id. at 720 (citations omitted).
29. The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." a. What is your view of the scope of the First Amendment's right to free exercise of religion? Response: The Free Exercise Clause of the First Amendment protects against discrimination on the basis of religion. In general, unless government action that burdens religion is "neutral and of general applicability," the government must establish that the law or policy advances a compelling government interest and is narrowly tailored to that interest. Church of the Lukumi Babalu Aye, Inc. v. City of

Hialeah, 508 U.S. 520, 531, 546 (1993). Only if the law or policy survives that "most rigorous of scrutiny" is the action constitutional. Id. b. Is the right to free exercise of religion synonymous and coextensive with freedom of worship? If not, what else does it include? Response: I do not understand the Supreme Court to have drawn a distinction between the freedom of religion and the freedom of worship for purposes of the Free Exercise Clause. The Supreme Court has described the right protected by the Free Exercise Clause as both the "free exercise of religion" and the "freedom of worship." See, e.g., Carson v. Makin, 142 S. Ct. 1987, 1996 (2022) ("The Free Exercise Clause of the First Amendment protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'" (quoting Lyng v. Northwest Indian Cemetery Protective Assn., 485 U.S. 439, 450 (1988))); Chaplinsky v. New Hampshire, 315 U.S. 568, 571 (1942) (explaining that the "freedom of worship" is a fundamental right made applicable to the States by the Fourteenth Amendment (citing Cantwell v. Connecticut, 310 U.S. 296, 303 (1940))). Government regulations that burden religious exercise and are not "neutral and generally applicable" trigger strict scrutiny under the Free Exercise Clause. Tandon v. Newsom, 141 S. Ct. 1294, 1296 (2021) (per curiam). c. What standard or test would you apply when determining whether a governmental action is a substantial burden on the free exercise of religion? Response: Please see my response to Question 29(a). d. Under what circumstances and using what standard is it appropriate for a federal court to question the sincerity of a religiously held belief? Response: Please see my response to Question 15. e. Describe your understanding of the relationship between the Religious Freedom Restoration Act and other federal laws, such as those governing areas like employment and education? Response: By its terms, the Religious Freedom Restoration Act ("RFRA") provides that it "applies to all Federal law, and the implementation of that law," and that "[f]ederal statutory law adopted after November 16, 1993 is subject to [RFRA] unless such law explicitly excludes such application by reference" to RFRA. 42 U.S.C. §§ 2000bb-3(a), (b). f. Have you ever issued a judicial opinion, order, or other decision adjudicating a claim under the Religious Freedom Restoration Act, the Religious Land use and Institutionalized Person Act, the Establishment Clause, the Free Exercise Clause, or any analogous state law? If yes, please provide citations to or copies of those decisions. Response: No.

31.Have you ever taken a position in litigation that conflicted with your personal views? Response: Yes.
How did you handle the situation? Response: I always understood that, under canons of professional ethics, I owed a duty to my client to provide zealous representation within the

bounds of the law. I strived to offer my best counsel to my clients and was honored to represent my clients in court.

36.If confirmed, do you commit to applying the law written, regardless of your personal beliefs concerning the policies embodied in legislation? Response: Yes.

43. Have you ever confessed error to a court? Response: To the best of my recollection, I have not confessed error to a court. a. If so, please describe the circumstances.
44. Please describe your understanding of the duty of candor, if any, that nominees have to state their views on their judicial philosophy and be forthcoming when testifying before the Senate Judiciary Committee. See U.S. Const. art. II, § 2, cl.
45. Response: Before testifying before the Senate Judiciary Committee, I swore an oath to testify truthfully and to the best of my ability, consistent with my professional and ethical obligations under Code of Conduct for United States Judges, which applies to judicial nominees. I have honored that oath in providing my testimony to the Committee.

Questions from Senator Thom Tillis for Julia E. Kobick
Nominee to be United States District Judge for the District of Massachusetts

3. Do you believe impartiality is an aspiration or an expectation for a judge? Response: Impartiality is an expectation of and a requirement for every judge. The judicial oath requires judges to swear to "faithfully and impartially discharge and perform all the duties incumbent upon me . . . under the Constitution and laws of the United States." 28 U.S.C. § 453. If confirmed, I would abide by that oath.
4. Should a judge second-guess policy decisions by Congress or state legislative bodies to reach a desired outcome? Response: No.
5. Does faithfully interpreting the law sometimes result in an undesirable outcome? How, as a judge, do you reconcile that? Response: I anticipate that the faithful application of the law will, at times, result in outcomes perceived by some as undesirable. Nevertheless, a judge must, in every case, set aside personal views and fairly and impartially apply the law. If confirmed, I would swear to "faithfully and impartially discharge" my duties, and I would do so to the best of my abilities. 28 U.S.C. § 453.
6. Should a judge interject his or her own politics or policy preferences when interpreting and applying the law? Response: No.

8.How would you evaluate a lawsuit challenging a Sheriff's policy of not processing handgun purchase permits? Should local officials be able to use a crisis, such as COVID-19 to limit someone's constitutional rights? In other words, does a pandemic limit someone's constitutional rights? Response: Americans retain constitutional rights during times of emergency, including pandemics. Should any case come before me concerning the lawfulness of pandemic-related policies, I would impartially and faithfully apply all relevant Supreme Court and First Circuit precedent, including the Supreme Court's decisions in Tandon v. Newsom, 141 S. Ct. 1294 (2021) (per curiam), and Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020) (per curiam), and the First Circuit's decision in Bayley's Campground, Inc. v. Mills, 985 F.3d 153 (1st Cir. 2021). In any case concerning Second Amendment rights, I would likewise impartially and faithfully apply all relevant Supreme Court and First Circuit precedent, including District of Columbia v. Heller, 554 U.S. 570 (2008), McDonald v. City of Chicago, 561 U.S. 742 (2010), Caetano v. Massachusetts, 577 U.S. 411 (2016), and New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022).
21.Mandamus is an extraordinary remedy that the court of appeals invokes against a district court only when the petitioner has a clear and indisputable right to relief and the district judge has clearly abused his or her discretion. Nearly every issuance of mandamus may be viewed as a rebuke to the district judge, and repeated issuances of mandamus relief against the same judge on the same issue suggest that the judge is ignoring the law and flouting the court's orders. a. If a single judge is repeatedly reversed on mandamus by a court of appeals on the same issue within a few years' time, how many such reversals do you believe must occur before an inference arises that the judge is behaving in a lawless manner? Response: I am not familiar with the circumstances described in this question. As a judicial nominee, I do not believe it appropriate for me to comment on matters concerning another federal judge or on cases handled by another federal judge or court of appeals. b. Would five mandamus reversals be sufficient? Ten? Twenty? Response: Please see my response to Question 21(a).

EXHIBIT 2 HON JUDGE JULIA E KOBICK ANSWER testimony UNDER OATH.

**I hereby certify that a copy of this document has been sent via e-mail to Mr. ALAN D. ROSE, Ms Meredith Doty, MS Jessica L. Perillo, Counsel for Defendant BOSTON COLLEGE. And A Copy was filed on the UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF MASSACHUSETTS Clerks office.**
**PRO SE. AVENIR AGAJ on behalf of itself Plaintiff .**

**Signed , Today 02 day of NOVEMBER 2026**

**14 PAUL STREET** **Signed :** Avenir Agaj

**BURLINGT0N** **Avenir Agaj**

**MA,01803**

**CELL: 857-544-0780** **Aviaga10@hotmail.com**